**Jeffrey L. SOFFERIN,**
**Plaintiff–Appellant,**

v.

**AMERICAN AIRLINES, INC., D.J.**
**Nelson and H.R. Tourtellott,**
**Defendants–Appellees.**

**No. 89–2662.**

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1990.

Decided Jan. 29, 1991.

James A. Romanyak, Lawrence T. Miller, Raymond E. Belstner and Gregory A. Stayart, Romanyak & Associates, Chicago, for plaintiff-appellant.

Peter J. Meyer, Mark E. Furlane, Debra J. Leonard, Gardner, Carton & Douglas, Chicago, for defendants-appellees.

Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Jeffrey L. Sofferin brought an action alleging discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964 and section 1981 of the Civil Rights Act of 1866. The district court granted the defendants' summary judgment motion on the Title VII claim and later dismissed Mr. Sofferin's section 1981 claims. Mr. Sofferin appealed. We reverse the grant of summary judgment on the Title VII claim and remand for further evidentiary proceedings; we affirm the district court's decision dismissing Mr. Sofferin's section 1981 claims.

## I

## BACKGROUND

### A. *Title VII*

Under section 706(e) of Title VII, a charge of employment discrimination generally must be filed with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discrimination. However, if a claimant initially institutes proceedings with a state or local agency that possesses the authority to grant or seek relief from the alleged discrimination, a charge can be filed up to 300 days after the discriminatory act.[1] Section 706(c) of Title VII provides that once a claimant initiates proceedings with a state agency, he cannot refile subsequently with the EEOC earlier than sixty days after the commencement of the state proceedings unless those proceedings have been "earlier terminated."[2] The sixty day provision is intended to "give States and localities an opportunity to combat discrimination free from premature federal intervention."

---

[1] Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e) reads, in pertinent part:

A charge under this section shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed [with the EEOC] by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

[2] Section 706(c), 42 U.S.C. § 2000e–5(c) (emphasis supplied) provides:

In the case of an alleged unlawful employment practice occurring in a State, ... which has a State or local law prohibiting the unlaw-

ful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under State or local law, *unless such proceedings have been earlier terminated,* provided that such sixty day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

*EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110, 108 S.Ct. 1666, 1668, 100 L.Ed.2d 96 (1988). Because Mr. Sofferin, at the earliest, filed his claim 299 days after the allegedly discriminatory conduct, he could not file a timely charge with the EEOC if he waited for the full sixty day deferral period to expire. Therefore, in order to file a timely charge of discrimination with the EEOC, Mr. Sofferin must have initiated proceedings with an appropriate state agency, and this agency must have terminated its proceedings within 300 days of the alleged discrimination. *Id.* at 111–12, 108 S.Ct. at 1669–70.

### B. *Facts*

American Airlines, Inc. (American) hired Mr. Sofferin on February 17, 1986. During his first year of employment, Mr. Sofferin was a probationary employee in the positions of flight engineer and co-pilot. He was based in Chicago, Illinois. Although Mr. Sofferin was assigned to flights that originated and departed from Chicago, he was permitted to live anywhere he chose; Mr. Sofferin resided in Farmington Hills, Michigan.

On February 20, 1987, American reviewed Mr. Sofferin's performance during the prior twelve months to determine whether he should be retained or discharged. Following this evaluation, American advised Mr. Sofferin that he had failed to complete successfully his probationary period and that he was discharged. At the time of his discharge, Mr. Sofferin believed that American was discriminating against him because he was Jewish. This belief was based on the conduct of H.R. Tourtellott and D.J. Nelson, occasional members of Mr. Sofferin's flight crew—and periodic reviewers of Mr. Sofferin's skills (others also evaluated Mr. Sofferin). Mr. Sofferin contends that Mr. Tourtellott and Mr. Nelson made or tolerated derogatory remarks about the Jewish religion. All of the allegedly discriminatory acts occurred in Illinois.

Mr. Sofferin went to the Detroit office of the EEOC on December 16, 1987 (299 days after his discharge), and filed a charge of discrimination against American. He was advised by an intake person that the charge would be forwarded to the Chicago EEOC office for processing. The Chicago EEOC office apparently received the charge on December 22, 1987 (305 days after Mr. Sofferin's discharge), and referred the charge to the Illinois Department of Human Rights (IDHR) on December 24, 1987 (307 days after discharge). Pursuant to a worksharing agreement between the IDHR and the EEOC, the IDHR waived its right to initially process the claim on December 24, 1987, the day it received the charge.

### C. *Worksharing Agreement*

As it has done with a majority of the state and local agencies that combat discrimination, the EEOC has entered into a worksharing agreement with IDHR. *See Commercial Office Prods.*, 486 U.S. at 112, 108 S.Ct. at 1669. The agreement is intended "to minimize duplication of effort in the handling of deferred charges ... and to achieve maximum consistency of purpose and results." Appellees' App. at 1 (Work Sharing Agreement). The worksharing agreement between the IDHR and the EEOC provides that the IDHR "hereby waives its exclusive [sixty day] right to process those charges [initially processed by the EEOC], ... so that the EEOC can take immediate action on such charges." *Id.* at 5. The agreement also establishes procedures for referral of charges filed with one agency that also meet the jurisdictional requisites of the other agency.

The agreement specifically provides that all charges received by the EEOC "shall be initially processed by the IDHR" by an EEOC employee in the Chicago District Office designated by the IDHR as its agent. Charges determined by the agent to fall within the waiver provision of the agreement must be forwarded to the IDHR for further review. Unless IDHR notifies the EEOC in writing that it has revoked its decision to terminate activity on the charge, "the determination of the IDHR's agent that such activity is terminated is final." *Id.* at 1–3.

The charge in this case was filed with the EEOC 299 days after the allegedly discriminatory acts; the filing cannot be timely unless, before the 300th day, IDHR proceedings were both initiated and terminated.

## D. *District Court Opinion*

The district court addressed Mr. Sofferin's argument that the IDHR, through its worksharing agreement with the EEOC, relinquished its control over the initial processing of Mr. Sofferin's charge. The court recognized that "[a] state agency's waiver of its exclusive 60-day period for initially processing a discrimination charge, pursuant to a worksharing agreement with the EEOC, is termination within the meaning of § 706(c) and thereafter the EEOC may deem the charge filed." *Sofferin v. American Airlines, Inc.*, 713 F.Supp. 1219, 1224 (N.D.Ill.1989). The worksharing agreement between the IDHR and the EEOC, noted the district court, requires that all charges within the waiver provision be forwarded to the IDHR's office. Therefore, a charge could not be effectively filed with the EEOC until first referred to the IDHR. Because his charge was referred to the IDHR 307 days after his discharge, the district court found that Mr. Sofferin failed to file a timely charge. *Id.* at 1226.[3]

On July 10, 1989, the district court, *sua sponte*, dismissed Mr. Sofferin's remaining section 1981 claims pursuant to the Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The district court found that *Patterson* limits the application of section 1981 to claims alleging discrimination during contract formation or contract enforcement. It held that, because Mr. Sofferin based his section 1981 claims solely upon allegations of discrimination occurring after the formation of his employment contract, his claims were not actionable under *Patterson*. *Sofferin v. American Airlines, Inc.*, 717 F.Supp. 597 (N.D.Ill.1989).

## II

## ANALYSIS

### A. *Title VII Claim*

The use of worksharing agreements between state and local agencies and the EEOC has been encouraged by Congress and approved by the Supreme Court. Congress has authorized the EEOC to cooperate with state and local agencies by entering into "written agreements" with those agencies in order to promote "effective enforcement" of Title VII. *See* 42 U.S.C. § 2000e–8(b); 42 U.S.C. § 2000e–4(g)(1); *see also Green v. Los Angeles City Superintendent of Schools*, 883 F.2d 1472, 1477 (9th Cir.1989). The Supreme Court has found the use of worksharing agreements consistent with these statutory sections. *See Commercial Office Prods.*, 486 U.S. at 122, 108 S.Ct. at 1675 ("These sections clearly envision the establishment of some sort of worksharing agreements between the EEOC and state and local agencies, and they in no way preclude provisions designed to avoid unnecessary duplication of effort or waste of time.").

In this case, we must determine whether a discrimination claim can be both "initiated" and "terminated" by a state agency solely by the terms of a worksharing agreement that waives the state agency's jurisdiction over certain types of claims. In practical terms, we must ascertain the degree of state agency involvement required before a particular claim can be considered "initiated" or "terminated" by the state agency for the purposes of this statutory scheme.

In analyzing this issue, logic would appear to dictate that we ought to deal with the issue of "initiation" before we deal

3. The district court also noted that section 706(c) designates the agency of the state in which the allegedly discriminatory act occurred as the appropriate state agency with which to file. *Sofferin v. American Airlines, Inc.*, 713 F.Supp. 1219, 1223 (N.D.Ill.1989). Because the allegedly discriminatory conduct occurred in Illinois, Mr. Sofferin was required to file his charge with the IDHR before filing with the EEOC. The court thus rejected the effectiveness of any waiver that may have been obtained by the Detroit EEOC from the Michigan Department of Civil Rights. *Id.* at 1224.

with the issue of "termination." Our approach, however, must be dictated not so much by abstract logic as by the requirement that, as a lower federal court, we draw the rationale of our decision from existing precedent. Since both the Supreme Court and our colleagues in other circuits have addressed more squarely the issue of "termination," we begin, as did the district court, with that requirement. Indeed, our exploration of that issue, in view of the existing precedent, may shed a helpful cross-light on the issue of "initiation."

### 1. Termination of state proceedings

■ Both the Supreme Court and other circuits have addressed what constitutes "termination." In *EEOC v. Commercial Office Products*, 486 U.S. 107, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988), the complainant filed a charge of discrimination with the EEOC 290 days after the alleged misconduct. The EEOC referred the charge to the appropriate state agency, which waived its right to process initially the claim within the 300–day limit. The state agency then sent a letter to the complainant explaining that it had waived its right to initial processing, but retained jurisdiction to act on the charge after the conclusion of the EEOC proceedings. *Id.* at 113, 108 S.Ct. at 1670. The issue before the Court was whether the waiver constituted "termination." The Court concluded that a state agency's waiver of a sixty day deferral period, pursuant to a worksharing agreement similar to the one in this case, "terminated" its proceedings under section 706(c), notwithstanding a provision in the worksharing agreement that permits the non-processing party to review the charge after the initial processing party's resolution of the case. *Id.* at 114–15, 108 S.Ct. at 1670–71. The Court stated that the two goals underlying the deferral provisions—deference to the states and efficient processing of claims—supported its conclusion that

waiver of the sixty day deferral period was sufficient to "terminate" the local agency's proceeding. *Id.* at 116–21, 108 S.Ct. at 1671–74.

*Commercial Office Products* is not dispositive of the issue presented here: whether the waiver provision in a worksharing agreement causes the state's proceedings to be terminated and the charge to be deemed filed with the EEOC. Mr. Sofferin's position is that, pursuant to the worksharing agreement, the state proceedings were terminated on the 299th day, when the EEOC received the charge; American contends that the IDHR could not terminate its proceedings until the charge was referred to an IDHR agent on day 305.

All four courts of appeals that have considered the question of termination since *Commercial Office Products* have agreed that a waiver pursuant to a provision that a state agency "hereby waives" exclusive jurisdiction over charges is effective without any further action by the state agency. *See Trevino–Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 878–79 (3d Cir.1990); *EEOC v. Techalloy Maryland, Inc.*, 894 F.2d 676, 678 (4th Cir.1990); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1479 (9th Cir.1989); *Griffin v. Air Prods. & Chem., Inc.*, 883 F.2d 940, 943 (11th Cir.1989). As did the district court, we agree with the decisions of the other circuits.[4]

American claims that the worksharing agreement between the EEOC and the IDHR evidences the parties' intention that termination of IDHR processing occurs when the IDHR agent acts on the charge. Appellees' Br. at 24. This argument ignores the plain language of the agreement: the worksharing agreement states that the IDHR "hereby waives" its exclusive processing rights to those charges assigned by the agreement to the EEOC for initial processing. It is this prospective waiver provi-

---

**4.** In these cases, the claimant initially filed with the appropriate state agency within the 300–day time frame, but the agency did not transmit its official decision to the EEOC until after the 300 days had run. Because we find that Mr. Sofferin could, depending on the construction given to the worksharing agreement, have timely initiated his proceedings with the IDHR, *see infra,* this case may not be meaningfully different from *Trevino–Barton, Techalloy, Green,* or *Griffin.*

sion, executed at the time the agreement was signed, that the Third, Fourth, Ninth, and Eleventh Circuits have held to terminate the state proceedings.[5]

The EEOC submits [6] that, under its regulations and procedural directives, a state agency's waiver in a worksharing agreement of initial processing rights for specified categories of charges causes a charge within a waived category to be deemed filed immediately with the EEOC. The most pertinent EEOC regulation provides:

> Where the document on its face constitutes a charge within a category of charges over which the [state] Agency has waived its rights to the period of exclusive processing referred to in paragraph (a)(3)(iii) of this section, the charge is deemed to be filed with the Commission upon receipt of the document. Such filing is timely if the charge is received [by the EEOC] within 300 days from the date of the alleged violation.

29 C.F.R. § 1601.13(a)(4)(ii)(A). "[I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference." *Commercial Office Prods.*, 486 U.S. at 115, 108

S.Ct. at 1671. We have no difficulty in concluding that the EEOC's interpretation of the agreement and its effect under section 706 of Title VII is reasonable and accordingly should be upheld.

This result is fully consistent with the remedial purposes of Title VII. "To hold that the waiver is not self-executing, and that it must be perfected by the agencies' strict compliance with the referral provisions of the worksharing agreement would be to exalt form over substance and preclude relief to a potentially meritorious claim simply because it was the victim of a bureaucratic mix-up." *Techalloy*, 894 F.2d at 679. Moreover, American's construction is inconsistent with the very purpose of worksharing agreements—to reduce red tape and to process expeditiously discrimination charges. *Id.; see also Griffin*, 883 F.2d at 994; *Green*, 883 F.2d at 1479.

### 2. Initiation of state proceedings

■ American argues that, even if state proceedings could be considered terminated by virtue of the worksharing agreement, they could not be initiated with the IDHR until the EEOC deferred the charges to the IDHR.[7] This argument is inconsistent with the Supreme Court's holding in *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30

---

5. Although the IDHR agent, or the IDHR itself, may subsequently determine that the IDHR should pursue the charge, this fact does not mean that the state agency has not terminated its proceedings. The Supreme Court has expressly refused to adopt such a restrictive definition of "termination." In *Commercial Office Products,* the Court stated that "[w]e cannot agree with respondent ... that 'terminate' must mean 'to end for all time.'" 486 U.S. at 115, 108 S.Ct. at 1671. Instead, the Court defined "termination" as "cessation in time." *Id.* The Court thus rejected the argument that a state agency had not terminated its proceedings because it retained authority to act on a charge in the future. Similarly, the fact that the worksharing agreement could be read as providing that both the IDHR agent and the IDHR itself later review waived charges to determine whether the IDHR should pursue a charge does not lead to the conclusion that the IDHR has failed to terminate its proceedings.

6. The EEOC filed a brief at the request of this court.

7. American relies heavily on *EEOC v. Hacienda Hotel*, 881 F.2d 1504 (9th Cir.1989). In *Hacienda Hotel,* the defendants argued that the complainants could not have "initially instituted" proceedings with the state agency because, by virtue of a worksharing agreement, the state agency had terminated in advance its exclusive 60 day processing period. The defendants argued that the shorter 180 day limitations period was applicable because the state proceedings were not initially instituted. The court held that the state agency proceedings were initiated notwithstanding the waiver provision; the transmittal of the charge by the EEOC to the state agency was sufficient to initiate state proceedings. Because the state agency received the charge within 300 days, the court did not consider the issue presented here—whether receipt of the charge by the EEOC commences and terminates state proceedings. *Id.* at 1510. Therefore, *Hacienda Hotel* does not require us to find that Mr. Sofferin failed to initiate state proceedings. Rather, *Hacienda Hotel* supports the proposition that state proceedings can be initiated even where a state has issued a prospective waiver.

L.Ed.2d 679 (1972). In that case, the Court determined that Title VII's deferral requirement was satisfied without the transmission of a written charge to a state agency as long as the procedure satisfied the purposes of the statute by insuring that the state agency has an opportunity to process charges first.

In *Love*, the EEOC had notified the state agency by telephone that it had received a charge. When the state agency informed the EEOC that it was not interested in acting on the charge, the EEOC proceeded with its investigation. The Court rejected the defendant's argument that state proceedings had not been commenced within the meaning of Title VII because the plaintiff had not filed a written charge with the state agency. In so holding, the Court emphasized that "[t]he filing procedure fully complied with the intent of [Title VII]." *Id.* at 525, 92 S.Ct. at 618. The Court went on to state that the purposes of Title VII were to "give state agencies a prior opportunity to consider discrimination complaints" and "to ensure expedition in the filing and handling of those complaints." *Id.* at 526, 92 S.Ct. at 618. Although the procedure followed in this case differs from the procedure followed in *Love*, due to the specific terms of the worksharing agreement at issue, the reasoning of *Love* clearly indicates that a procedure that satisfies Title VII's purpose of ensuring that a state has an opportunity to play its role is sufficient to confer jurisdiction on the EEOC. In *Love*, some communication was necessary between the state agency and the EEOC because there was no prospective waiver. Here, by contrast, no communication occurred between the IDHR and the EEOC because they had *already* communicated pursuant to the worksharing agreement. Therefore, a worksharing agreement could establish a procedure that permitted Mr. Sofferin's original filing with

the EEOC to commence and terminate state proceedings.[8]

■ Such a procedure for handling charges covered by waiver provisions would be fully consistent with the purposes of the deferral provisions of Title VII. These deferral provisions were intended "to give states a reasonable opportunity to act under state law before the commencement of any Federal proceedings." *Commercial Office Prods.*, 486 U.S. at 117, 108 S.Ct. at 1672 (citation omitted). That congressional intent is fully satisfied when states voluntarily waive that opportunity "through individually negotiated agreements." *Id.*

> Congress clearly foresaw the possibility that States might decline to take advantage of the opportunity for enforcement afforded them by the deferral provisions. It therefore gave the EEOC the authority and responsibility to act when a State is "unable or unwilling" to provide relief. 110 Cong.Rec. 12725 (1964) (remarks of Sen. Humphrey). This Court, too, has recognized that Congress envisioned federal intervention when "States decline, for whatever reason, to take advantage of [their] opportunities" to settle grievances in "a voluntary and localized manner." *Oscar Mayer & Co. v. Evans*, 441 U.S. [750] at 761 [99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979)].... [D]eferral was meant to work as "a carrot, but not a stick," affording States an opportunity to act, but not penalizing their failure to do so other than by authorizing federal intervention.

*Id.* 486 U.S. at 118, 108 S.Ct. at 1673. We do not believe that a state would be deprived of its reasonable opportunity to act under state law if this state waived its right to process initially certain types of claims pursuant to a worksharing agreement.[9] Provided that waiver "is a volun-

---

**8.** *See Yeung v. Lockheed Missiles & Space Co.*, 504 F.Supp. 422, 425 (N.D.Cal.1980) (holding that complainant's initial filing with the EEOC "simultaneously initiated state proceedings and invoked the waiver provisions of the Worksharing Agreement").

**9.** Nothing in Title VII requires the state agency to reiterate its waiver as to each charge or provide any particular kind of notice that it does not intend to process each charge. *See Pacific Maritime Ass'n v. Quinn*, 465 F.2d 108, 110–11 (9th Cir.1972) ("If ... representatives choose to do nothing with a complaint ... and accordingly terminate state proceedings—

tary choice made through individually negotiated agreements, not an imposition by the Federal Government[,]" waiver is consistent with the purposes of Title VII. *Id.* at 117, 108 S.Ct. at 1672.

Worksharing agreements are designed to ensure expedition in the filing and handling of complaints by allowing the state agency to facilitate the process by notifying the EEOC in advance of the agency's intention not to process initially a particular type of charge so that the EEOC can promptly begin its processing of such charges. To hold that the waiver cannot occur until the state has been notified of each individual charge and reconfirms what it has already agreed to do in a worksharing agreement would add a procedural technicality that would delay the processing of charges. This result would be contrary to Congress' intent to promote time economy and the expeditious handling of cases. Requiring reconfirmation of every waiver would needlessly delay the overwhelming majority of charges over which the state agency has waived its initial processing rights through its worksharing agreement. Thus, we are confident that a worksharing agreement *could* provide that a filing with the EEOC simultaneously initiates and terminates state proceedings.

However, on the record before us, we cannot say definitively that *this* worksharing agreement establishes an advance waiver by the IDHR of its jurisdiction when a claim is filed with the EEOC. In this case, the IDHR clearly entered into a worksharing agreement with the EEOC that waived the IDHR's exclusive sixty day right to process claims during the deferral period. Mr. Sofferin and the EEOC, one of the parties to the agreement, interpret the agreement as follows. While the IDHR is the only appropriate state agency to toll the 300-day time limit, the IDHR has relinquished its control over the initial processing of Mr. Sofferin's charge pursuant to a blanket waiver in the worksharing agreement.[10] Although charges are reviewed by Chicago EEOC employees designated as agents of the IDHR, this agent merely reviews whether the charge has *already* been waived.[11] Therefore, it is of no consequence that Mr. Sofferin filed his charge with the *Detroit* EEOC, despite the fact that the worksharing agreement was between the IDHR and the *Chicago* EEOC; EEOC regulations provide that a charge need not be filed in the state where the unlawful employment conduct occurred. *See* 29 C.F.R. § 1601.8 ("A charge may be made in person or by mail at the offices of the Commission in Washington, D.C., or any of its district, area or local offices or with any designated representative of the Commission."). The worksharing agreement created a relationship between the IDHR and the EEOC that required only

whether with a helpless shrug of the shoulders or a turning out of pockets, or no explanation whatsoever—the federal purpose has been fully met.").

**10.** Paragraph ten of the worksharing agreement provides:

In order to avoid delay on those charges reserved to EEOC under paragraph 8 above, IDHR *hereby waives* its exclusive right to process those charges for 60 days, as provided in Section 706(c) of Title VII of the Civil Rights Act of 1964, as amended, and Section 14(b) of the ADEA, *so that EEOC can take immediate action on such charges.*

Appellee's App. at 5 (emphasis supplied).

**11.** Paragraph three of the worksharing agreement provides:

All charges received by EEOC shall be initially processed by IDHR as defined below:
IDHR will designate one or two employees of EEOC, as necessary, who will be made available by EEOC, as IDHR's agent(s) for the purpose of reviewing each Title VII charge received by EEOC to determine whether IDHR has agreed to terminate its activity respecting the charge within the meaning of Section 706; i.e., whether the charge falls within those classes of charges affected by the Work Sharing Agreement waiver provisions. All charges which are determined upon this review to be within the Work Sharing Agreement waiver provision will be forwarded to IDHR's office.... IDHR will thereafter conduct such further review of these charges as it desires....
However, unless and until IDHR notifies EEOC in writing that it, upon such further review, has revoked its decision to terminate activity with respect to a given charge, the determination of IDHR's agent that such activity is terminated shall be final.

Appellees' App. at 1–2.

that, for his charge to be timely, Mr. Sofferin file his charge with an EEOC office within 300 days of his discharge.

American argues for an entirely different construction of the worksharing agreement. American contends that waiver occurs only when the case is reviewed by the IDHR's agent and is determined to fall within the class of claims that are waived under the worksharing agreement. Because no agent of the IDHR could have reviewed the charge until 305 days after Mr. Sofferin's discharge, the charge was not initially instituted with the IDHR within the 300–day limit.

After reviewing the worksharing agreement, we cannot say that either Mr. Sofferin's or American's construction is entirely without support. We therefore respectfully disagree on this point with our colleague in the district court who was of the view that the agreement unambiguously required a waiver of each complaint by the IDHR. The crucial inquiry is whether the worksharing agreement provides for waiver of the right to initially institute proceedings at the time of the worksharing agreement itself, or at the time of the review of the IDHR agent. We remand to the district court so that it may hold an evidentiary hearing to ascertain the proper characterization of the IDHR agent's role in the waiver procedure.

### B. Section 1981 Claims

■ In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that 42 U.S.C. § 1981 proscribes only discriminatory conduct at the time of the initial formation of a contract and discriminatory conduct that impairs the right to enforce contract obligations through legal process. *Id.* 109 S.Ct. at 2374. Postformation conduct by an employer relating to the terms and conditions of employment, however, is not actionable under section 1981. Because discriminatory postformation conduct, "including breach of the terms of the contract or imposition of discriminatory working conditions," *id.* 109 S.Ct. at 2373, concerns the performance of existing contractual obligations and the conditions of continuing employment, it is more appropriately governed by state contract law and Title VII. *Id.*

Mr. Sofferin does not allege that American refused to hire him, or that it interfered with his exercise of his legal rights to enforce his contract once it did hire him. Rather, Mr. Sofferin alleges that American wrongfully discharged him because of his religion. "Discharge is the type of postformation 'breach of contract' conduct not protected by section 1981." *Courtney v. Canyon Television & Appliance Rental,* 899 F.2d 845, 849 (9th Cir.1990). Employees may not litigate disputes concerning discharge under section 1981 because the right to make a contract is not implicated.[12] Therefore, under *Patterson,* Mr. Sofferin's section 1981 claims are not actionable.[13]

### Conclusion

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed and remanded in part. The parties shall bear their own costs in this court.

---

12. Because Mr. Sofferin argues that he was improperly *discharged,* he does not implicate that part of *Patterson* dealing with promotions. The Court held that:

> [T]he question whether a *promotion* claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer.... Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

109 S.Ct. at 2377 (emphasis supplied). Although Mr. Sofferin argued that he failed to receive a promotion in the district court, he did not make this argument on appeal.

13. This court already has determined that *Patterson* should be applied retroactively to cases pending at the time *Patterson* was decided. *See McKnight v. General Motors Corp.,* 908 F.2d 104, 110–11 (7th Cir.1990). This decision is in line with those of other circuits that have considered this issue. *See, e.g., Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845, 849 (9th Cir.1990); *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1534 (11th Cir.1990) (per curiam); *Carroll v. General Accident Ins. Co.,* 891 F.2d 1174, 1175 (5th Cir.1990).

AFFIRMED IN PART AND REVERSED AND RE-
MANDED IN PART.