Hilda G. WORTHINGTON, Appellant,

v.

UNION PACIFIC RAILROAD, Appellee.

No. 90–1698.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1990.
Decided Nov. 4, 1991.

Jeff Miller, Omaha, Neb., argued (Duncan Young, on brief), for appellant.

Kathleen Ford, Omaha, Neb., argued, for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Hilda G. Worthington appeals from the district court's entry of summary judgment denying her Title VII claim as time barred. Worthington, alleging that Union Pacific Railroad had denied her a brakeman position because of her sex, filed a complaint with the Nebraska Equal Opportunity Commission (NEOC) 299 days after the alleged act of discrimination. The NEOC forwarded the claim to the United States Equal Employment Opportunity Commission district office six days later. The EEOC denied the claim on the basis that it was not filed with the EEOC within the 300–day statutory period. The district court held that although the NEOC was authorized to receive discrimination charges for the EEOC, Worthington's complaint could not be deemed timely filed with the EEOC because the NEOC had an exclusive right to process the charge that did not end until after the 300–day period. *Worthington v.*

*Union Pac. Railroad,* CV–89–0–526, slip op. at 4–5 (D.Neb. Mar. 30, 1990). Worthington argues that under the terms of a worksharing agreement between the agencies, the charge should be deemed filed with the EEOC on the date it was filed with the NEOC. We conclude that the charge was timely filed, and we reverse and remand.

Worthington began working for Union Pacific in 1981. In March 1988, she was transferred to a brakeman position pending her successful completion of a required apprenticeship program. On April 28, 1988, the manager of terminal operations told her that although she had performed very well on all of the tests, she would not be certified as a brakeman because her legs were too short. Another company official told her that she would instead be placed in an equivalent position. After several months passed with no transfer, Worthington complained to the railroad's personnel department that the company had discriminated against her because of her sex. On February 21, 1989, a railroad official told her that the company would not place her in any position at all and would not attempt to assist her in any manner.

On that same date, Worthington went to the NEOC office. On February 22, she submitted a signed and notarized charge of discrimination to the NEOC. The charge was typed up on EEOC Form 5, which was addressed at the top to the "Nebraska Equal Opportunity Commission and EEOC." In the upper right-hand corner, an EEOC charge number was handwritten. At the bottom of the page, a box next to the printed statement "I also want this charge filed with the EEOC" was left blank. On the form, Worthington identified April 28, 1988, as the "date most recent or continuing discrimination took place." February 22, 1989, the date she submitted her complaint, was the 299th day after April 28.[1] The NEOC forwarded Worthington's complaint to the EEOC district office in Denver on February 28, 1989.

---

1. The district court so found, and both parties treat the complaint as filed on the 299th day. We count 300, the last day rather than the next to the last day, so the difference does not have legal significance.

On May 24, 1989, the EEOC dismissed Worthington's charge and sent her a Notice of Right to Sue form. The notice stated that the EEOC lacked jurisdiction to process the charge because it was "untimely filed" with the EEOC.

On August 16, 1989, Worthington filed this action. The district court granted the railroad's motion for summary judgment, holding that Worthington's claim was time-barred. *Worthington,* slip op. at 5. The court reasoned that although the NEOC may be an authorized agent of the EEOC for the purposes of *receiving* charges, the charges are not deemed *filed* with the EEOC until one of three events specified in 29 C.F.R. § 1601.13(b)(1) (1990) occurs.[2] Slip op. at 4. The district court found that none of the triggering events occurred before the 300–day period expired on February 23, 1989. *Id.* at 5. Worthington's complaint, it concluded, could not be deemed filed with the EEOC until February 28, 1989, the date when the NEOC forwarded the charge to the EEOC. *Id.*

We review de novo the district court's grant of summary judgment, *Didier v. J.C. Penney Co.,* 868 F.2d 276, 280 (8th Cir. 1989), and affirm only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *United Tel. Co. v. Johnson Publishing Co.,* 855 F.2d 604, 607 (8th Cir.1988).

## I.

To maintain a Title VII suit, the complainant must file a timely charge with the EEOC. *Owens v. Ramsey Corp.,* 656 F.2d 340, 342 (8th Cir.1981). In a deferral state

such as Nebraska,[3] this requires the filing of the charge within 300 days of the alleged act of discrimination. 42 U.S.C. § 2000e–5(e); *Owens,* 656 F.2d at 342. Under 42 U.S.C. § 2000e–5(c), a state deferral agency, such as the NEOC, has a 60–day period in which it has the exclusive right to initially process discrimination charges. Consequently, regardless of whether the charge is initially presented to the EEOC or to the state deferral agency, the charge is not deemed filed with the EEOC until the expiration of 60 days or until the state agency terminates its proceedings or waives its exclusive right to process the charge, whichever is earliest. *See* 29 C.F.R. §§ 1601.13(a)(4)(ii)(B), 1601.13(b)(1) (1990). Regardless of which of these three events triggers "filing" with the EEOC, the filing still must occur within the 300–day period. *Id.*

Worthington argues that the NEOC, in a worksharing agreement with the EEOC, waived its right to the exclusive 60–day processing period with regard to certain types of charges, including hers. Because the NEOC, as an agent of the EEOC, received her charge on the 299th day and because the NEOC had previously waived its exclusive right to process her type of charge, Worthington argues that her charge was constructively received by and filed with the EEOC on the 299th day. The railroad does not dispute the effect of the waiver provisions in the worksharing agreement. Instead, it argues that the waiver provisions do not apply because Worthington did not indicate by checking the appropriate box on her complaint that

---

**2.** 29 C.F.R. § 1601.13(b)(1) states:

When a charge is initially presented to a 706 Agency and the charging party requests that the charge be presented to the Commission, the charge will be deemed to be filed with the Commission *upon expiration of 60 ... days* after a written and signed statement of facts upon which the charge is based was sent to the 706 Agency, ... or *upon the termination of 706 Agency proceedings,* or upon *waiver of the 706 Agency's right to exclusively process the charge,* whichever is earliest. Such filing is timely if effected within 300 days from the date of the alleged violation.

(Emphasis added).

**3.** Because Nebraska has a fair employment practice law and has established a state agency that is empowered to act against unlawful employment practices, *see Nebraska Fair Employment Practice Act,* Neb.Rev.Stat. §§ 48–1101— 48–1126 (Reissue 1988 and Supp.1990), the NEOC qualifies as a state deferral or "706" agency. *See* 29 C.F.R. §§ 1601.70, 1601.74, 1601.80 (1990). Thus, Nebraska is a "deferral" state, which gives a complainant the benefit of a 300–day filing period under Title VII. 42 U.S.C. § 2000e–5(e) (1988).

she wished to have her charge filed with the EEOC as well as with the NEOC.

■ We reject the railroad's argument. Under the terms of the worksharing agreement, the NEOC is the authorized agent of the EEOC and is able to receive and process charges on behalf of the EEOC.[4] Worthington filed her charge on an EEOC form that was addressed to the EEOC and NEOC, and her complaint was assigned an EEOC "charge number." Under these circumstances, the argument that Worthington did not file her charge with the EEOC simply because of a failure to place an "X" in a designated box at the bottom of the form is not convincing. *See EEOC v. Shamrock Optical Co.*, 788 F.2d 491, 491 n. 2 (8th Cir.1986) (discrimination charge filed with NEOC on an EEOC form and addressed to both agencies was dually filed with NEOC and EEOC). *See also Pollard v. City of Hartford*, 539 F.Supp. 1156, 1160 (D.Conn.1982).

Having decided that Worthington submitted her charge to both agencies, we must next decide when the charge was deemed filed with the EEOC, as the date of filing is not always dictated by the date the agency receives the charge. Under 29 C.F.R. §§ 1601.13(a)(4)(ii)(B) and 1601.-13(b)(1), one of the three triggering events (expiration of the state's exclusive 60–day processing period, termination of state proceedings, or waiver of those proceedings) must occur before the end of the 300–day limitations period. Thus, while both agencies can simultaneously *receive* a charge, the charge is not deemed *filed* with the EEOC until one of the three triggering events occurs. In essence, the EEOC, after constructively receiving a complaint presented initially to a state deferral agency, holds the complaint in " 'suspended animation' " until state proceedings are terminated. *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472,

1476 (9th Cir.1989) (quoting *Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972)).

The resolution of the case before us turns on the meaning of the worksharing agreement between the NEOC and the EEOC, which Worthington argues contains an express, self-executing waiver of the NEOC's right to the exclusive 60–day processing period.

Title VII expressly authorizes the EEOC to enter into worksharing agreements with state and local agencies to promote effective enforcement of the statute. *See EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 112, 108 S.Ct. 1666, 1669–70, 100 L.Ed.2d 96 (1988); 42 U.S.C. §§ 2000e–8(b); 2000e–4(g)(1) (1988). The NEOC and the EEOC's Denver office are parties to a worksharing agreement that "designates and establishes the NEOC as an agent of the EEOC for the purpose of receiving charges on behalf of the EEOC...." Worksharing Agreement, Para. 2. Under Paragraph 6 of the agreement, the NEOC agrees to "take primary responsibility for the processing [of] all charges originally received by the NEOC and EEOC except as provided in paragraph 7...." In Paragraph 7, the EEOC takes primary responsibility for processing certain types of charges, including "[a]ll charges received by the EEOC ... *240 or more days after the alleged act occurred.*" (Emphasis added.) Paragraph 8 makes explicit the NEOC's waiver of the 60–day processing period with regard to the specified charges:

> In order to avoid delay as to all charges other than those enumerated in paragraph 6 above, the NEOC *hereby waives its exclusive right to process* those charges for 60 days, as provided in Section 706(c) of Title VII of the Civil Rights Act of 1964, as amended, so that the EEOC can take immediate action on such

---

4. Paragraph 2 of the Worksharing Agreement between the NEOC and EEOC states:

The EEOC ... designates and establishes the NEOC as an agent of the EEOC for the purpose of receiving charges on behalf of the EEOC and the NEOC agrees to receive such charges. All charges received by the NEOC

which meet its jurisdictional requirements and those of Title VII ... will be forwarded to the EEOC as soon as practicable. Charges which do not meet the NEOC's jurisdictional requirements, but may meet those of Title VII ... will be received as well as forwarded to the EEOC.

charges and effectively implement the worksharing provision of paragraph 7 above.

(Emphasis added.)

Relying on these provisions of the worksharing agreement, Worthington argues that state proceedings were "automatically and simultaneously instituted and terminated" on February 22, 1989, the date the NEOC and the EEOC received her charge. Because the EEOC received her charge more than 240 days after the alleged act of discrimination, Worthington asserts that it falls into the category defined in Paragraph 7 and thus was exempt from the NEOC's exclusive 60–day processing period. She further asserts that the waiver provision of Paragraph 8 is self-executing, meaning that the NEOC did not need to take any further action for its waiver to be effective.

The district court concluded that the NEOC could not have terminated its proceedings or waived its exclusive right to process the charge before February 28, 1989, the date on which the NEOC forwarded the complaint to the EEOC. The district court, however, did not consider the effect of the waiver provisions in the worksharing agreement. *See* slip op. at 5.

A recent Supreme Court decision provides guidance on the effect of waivers in worksharing agreements, but does not resolve the precise issue before us. In *Commercial Office Products*, the Court held that a state agency's waiver of the 60–day exclusive processing period under the terms of a worksharing agreement "terminated" its proceedings under 42 U.S.C. § 2000e–5(c), despite a provision in the agreement that permitted the state agency to retain the authority to reinstitute proceedings following the EEOC's resolution of the charge. 486 U.S. at 115–16, 125, 108 S.Ct. at 1671–72, 1676. While establishing that a valid waiver can immediately terminate state proceedings, *Commercial Office Products* failed to address whether a waiv-

er in a worksharing agreement is self-executing. Because the state agency in *Commercial Office Products* had sent a notice of waiver (under the terms of the worksharing agreement) to the complainant before the 300–day period expired, *id.* at 113, 108 S.Ct. at 1670, the Court did not address whether the provision in the worksharing agreement was sufficient by itself to establish an effective waiver. *See Green*, 883 F.2d at 1478 & nn. 7, 8.

■ While no Eighth Circuit case discusses whether waivers in worksharing agreements established under Title VII are self-executing,[5] other circuits have held that a waiver of exclusive jurisdiction in a worksharing agreement can be effective without further action by the state agency. *See Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 556 (7th Cir.1991); *Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3rd Cir.1990); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir.1990); *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir.1989); *Green*, 883 F.2d at 1479.

The facts of *Green* are substantially similar to the facts now before us. In *Green*, the plaintiff filed a charge with the state agency on January 24, 1985, the 289th day after the most recent incident of alleged discrimination. 883 F.2d at 1474. Twelve days later and one day after the expiration of the 300–day statutory period, the state agency transmitted Green's complaint to the EEOC, indicating that under the terms of a worksharing agreement, the charge was to be initially processed by the EEOC. *Id.*

The worksharing agreement at issue in *Green*, similar to the one before us, provided that all charges received by the state agency between 241 and 300 days after the alleged act of discrimination were to be processed by the EEOC. *Id.* at 1479. Relying on the worksharing agreement, the Ninth Circuit held that Green's charge was constructively received by the EEOC on

---

**5.** We have, however, recognized that under a worksharing agreement, a state agency may waive the 60–day exclusive processing period. *Shepherd v. Kansas City Call*, 905 F.2d 1152, 1153 (8th Cir.1990) (citing *Commercial Office Products*, 486 U.S. at 115–16, 108 S.Ct. at 1671–72).

January 24, 1985, *id.* at 1476, and was filed with the EEOC on that same date, *id.* at 1480. The court concluded that the waiver in the worksharing agreement between the state agency and the EEOC was self-executing, stating: "Nothing in Title VII requires that the state reiterate its waiver with each charge or provide any particular kind of notice that it does not intend to process a charge." *Id.* at 1479. The court reasoned that to require the State to confirm what is already stated in the worksharing agreement would simply impose another procedural hurdle and could have the effect of rendering untimely a charge filed within the 300–day limit. *Id.* at 1479. Because the waiver in the worksharing agreement was self-executing, the Court concluded that "Green's charge must be deemed to have been filed with the EEOC when it was filed with the [state agency]." *Id.* at 1480.

The reasoning of *Green* is persuasive. Nothing in Title VII, the federal regulations, or the worksharing agreement between the EEOC and NEOC requires the State to confirm its waiver as each new case arises. The requirement of an individualized waiver would run counter to the remedial purposes of Title VII by imposing an unnecessary requirement. Title VII is "a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979) (quoting *Love v. Pullman Co.,* 404 U.S. at 527, 92 S.Ct. at 619).

In a similar case, the Eleventh Circuit relied on the terms of a worksharing agreement, federal regulations, and public policy to conclude that a state agency's waiver of the exclusive processing period resulted in an instantaneous "constructive termination" of state proceedings. *Griffin,* 883 F.2d at 943. Relying on *Commercial Office Products,* the court stated that its result "comports with policies of ensuring investigatory efficiency and preserving a complainant's federal remedy in discrimination suits." 883 F.2d at 944. *See also Techalloy,* 894 F.2d at 679 (conclusion that waiver in worksharing agreement is self-

executing comports with remedial purposes of Title VII).

The express language of the worksharing agreement between the NEOC and the EEOC demonstrates that the NEOC's waiver is intended to be self-executing and that no further action by the NEOC is required. In Paragraph 8, the agreement states that the "NEOC *hereby waives* its exclusive right ..." (Emphasis added.) In *Sofferin,* the Seventh Circuit concluded that a "hereby waives" clause established a prospective waiver that automatically terminates state proceedings. 923 F.2d at 556–57. The purpose of the NEOC's waiver, as stated in Paragraph 8, is to "avoid delay" by allowing the EEOC to take "immediate action ... and effectively implement" the arrangement described in Paragraph 7.

We conclude, based on the express language of the worksharing agreement between the EEOC and NEOC and decisions of other courts interpreting similar agreements, that the NEOC's waiver was self-executing and required no further action by the NEOC to be effective. The automatic waiver had the effect of immediately terminating state proceedings on the same day that Worthington filed her charge with the NEOC. *See Griffin,* 883 F.2d at 943. Under 42 U.S.C. § 2000e–5(c) and 29 C.F.R. § 1601.13(b)(1), the termination of state proceedings cuts off the state's 60–day exclusive processing period and triggers immediate filing with EEOC.

Because the EEOC constructively received the charge on the date that it was filed with the NEOC, and because the NEOC's waiver of the exclusive processing period was immediately effective, we hold that Worthington timely filed her charge with the EEOC on February 22, 1989, the 299th day.

## II.

The railroad also argues that we should give deference to the EEOC's interpretation of Title VII, the federal regulations, and the worksharing agreement. *See Commercial Office Products,* 486 U.S. at 115, 108 S.Ct. at 1671. There is nothing in the record regarding the EEOC's interpre-

tation other than its statement on the "Notice of Right to Sue" form that Worthington's "charge was untimely filed with the commission." Under these circumstances, we see no reason to give deference to the EEOC's interpretation.

We reverse the district court's grant of summary judgment and remand for further proceedings.