Milton B. RUSSELL, Plaintiff–Appellant,

v.

DELCO REMY DIVISION OF GENERAL MOTORS CORPORATION, Saegertown Manufacturing Company and Jordan Chalmer, Defendants–Appellees.

No. 94–2896.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 4, 1995.

Decided April 6, 1995.

Randall Palmer, III (argued), Frank L. Milton, San Antonio, TX, for plaintiff-appellant.

Reginald Bishop (argued), Roberts & Bishop, Indianapolis, IN, for defendant-appellee.

Gwendolyn Young Reams, Carolyn L. Wheeler, James R. Neely, Jr., Susan Starr, and Mary L. Clark (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, for amicus curiae.

Before POSNER, Chief Judge, CUDAHY, Circuit Judge, and GRANT, District Judge.[*]

CUDAHY, Circuit Judge.

Milton Russell brought suit against his employer, Delco Remy, alleging race-based employment discrimination. The district court dismissed his complaint in light of his failure to file a charge of discrimination within Title VII's 180–day filing period. After the entry of judgment, Russell filed a motion requesting that the district court amend its ruling to take account of Title VII's 300–day filing limitation, ordinarily applicable to discrimination claims involving state agencies. The district court refused to reconsider its prior determination. It held that Russell's failure to *file* his motion within ten days of the entry of judgment converted that motion into a request for relief from judgment under Fed.R.Civ.P. 60(b). In view of Rule 60(b) standards for correcting errors of law, the district judge refused to examine the merits of Russell's request. We believe that the district court's refusal to reexamine its previous ruling was error. We therefore vacate and remand.

## I.

Delco Remy employed Milton Russell from June 6, 1973 until October 4, 1990. At the time of his discharge, he was working as a senior buyer in charge of purchasing parts and inventory. Delco Remy became suspicious of Russell's possible involvement in illegal activities at some point during the course of his employment. In September of 1990, Russell was arrested for his alleged involvement in a "kickback" scheme. Delco Remy suspended his employment soon thereafter, and on October 4, 1990, Delco Remy formally terminated him. Four days later, on October 8, 1990, the authorities formally charged Russell with extortion in violation of 18 U.S.C. § 1951.

Russell went to trial for extortion sometime in December of 1990. He was eventually acquitted. On June 6, 1991, he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that he had been treated unfavorably and ultimately fired because of his race. This filing occurred 245 days after Russell's termination by Delco Remy.

After a bit of procedural wrangling, the district court granted summary judgment in favor of Delco Remy. It held that Russell's discrimination claim was time-barred because it believed that Title VII required a victim to file a charge "within 180 days after the alleged unlawful employment practice." Rejecting Russell's argument that the last discriminatory act occurred during the prosecution of his criminal trial, the district court started the limitations clock on October 4, 1990, the day Delco Remy terminated Russell. In light of its conclusion that October 4th was the latest date of any alleged discrimination, the district court entered judgment in favor of Delco Remy. Prior to the entry of judgment, Russell had not contested the district court's use of the 180–day limitations period.

The district court's judgment was docketed on January 10th. Ten days later, on January 20th, Russell *mailed* a post-judgment motion requesting that the district court reconsider its ruling in light of Title VII's 300–day limitations period. Russell's motion was not *filed* until January 27th.

The district court ultimately refused to reach the merits of Russell's claim concerning the 300–day limitations period. It concluded that Russell's failure to *file* his post-judgment motion within ten days of the judgment converted his request into a motion seeking relief from judgment under Rule 60(b), rather than a motion for reconsideration under Rule 59(e). In light of Rule 60(b)'s standards, the district court concluded that it would be inappropriate to address the previously-omitted argument about the limitations period. It therefore denied Russell's motion. We conclude that the district court committed error, and vacate and remand Russell's case.

---

[*] The Hon. Robert A. Grant, District Judge for the Northern District of Indiana, sitting by designa-tion.

## II.

The present case requires us to examine the differences between Federal Rules of Civil Procedure 59(e) and 60(b). Both rules govern post-judgment motions attacking the merits of a district court's decision. Both rules can be used to have a court correct a judgment. Yet the rules differ from each other in certain well-known respects. The particular rule under which a party files a post-judgment motion affects matters ranging from appellate jurisdiction to the standards to be employed when deciding whether to grant post-judgment relief.

Rule 59(e) permits a district court to entertain a motion to alter or amend a judgment. A claimant can invoke the rule to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact. *See Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191–92 (7th Cir.1990). The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings. *Charles v. Daley*, 799 F.2d 343, 348 (7th Cir.1986). The rule must be invoked, however, within ten days of the entry of judgment. And the rule may not be used to raise novel legal theories that a party had the ability to address in the first instance. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986).

Rule 60(b), to some degree, provides overlapping relief. It enables a court to grant relief from a judgment under the particular circumstances listed in the text of the rule. One of those circumstances envisions the vacation of a judgment in the event of "mistake, inadvertence, surprise or excusable neglect." Fed.R.Civ.P. 60(b)(1). Rule 60(b) is, however, an extraordinary remedy. *See McKnight v. United States Steel Corp.*, 726 F.2d 333, 338 (7th Cir.1984). The rule was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law. *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367

(5th Cir.1993). Attorney failures, for instance, provide no basis for avoiding a judgment under Rule 60(b). *United States v. 7108 West Grand Ave.*, 15 F.3d 632, 635 (7th Cir.1994).

The overlap between the two rules is therefore imperfect. A court should correct a manifest error of law under Rule 59(e). Rule 59(e)'s strict time limit permits the correction of such a mistake at a relatively early, and consequently less expensive, stage in the process of the review of judgments. *See Western Industries, Inc. v. Newcor Canada Limited*, 709 F.2d 16, 17 (7th Cir.1983); *Charles*, 799 F.2d at 348. Rule 60(b), on the other hand, is not an appropriate vehicle for addressing simple legal error; otherwise, a party could circumvent the ordinary time limitation for filing a notice of appeal.[1] *McMillan*, 4 F.3d at 367. *See also Parke–Chapley Construction Co. v. Cherrington*, 865 F.2d 907, 914–15 (7th Cir.1989). The correction of mistakes under Rule 60(b) is, of course, committed to the district court's sound discretion. *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 303 (7th Cir. 1994). But that discretion must be exercised with a view to the differences inherent in the two rules.

The district court did as much here. It relied upon the difference between the two rules to deny Russell's request for post-judgment relief. It essentially determined that it had no obligation to examine the specifics of Russell's claim because his claim was a motion to alter or amend judgment under Rule 60(b). His attorney's failure to seek application of Title VII's 300–day limitations period, in the district court's view, constituted an error which the court could not address. *See 7108 West Grand*, 15 F.3d at 635.

The problem with this reasoning lies not in the district court's approach, but in its conclusion that Russell's motion was asserted under Rule 60(b). The district court believed that Rule 60(b) standards governed because Russell's motion was *filed*

---

1. A narrow exception to this general statement concerning legal error exists. *See generally Watson v. Symons Corp.*, 121 F.R.D. 351, 353 (N.D.Ill.1988) (discussing exception to general rule where a change in the applicable law and the Rule 60(b) motion itself both occur within the thirty day time period for filing a notice of appeal).

more than 10 days after the entry of judgment. This was error. Characterization of a post-judgment motion depends entirely upon when that motion is *served*. The plain language of Rule 59(e) states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after the entry of the judgment." Fed.R.Civ.P. 59(e). Service by mail, of course, is complete at the time of mailing. Fed.R.Civ.P. 5(b). Therefore, to determine whether the post-judgment motion was governed by the standards of Rule 59(e) or Rule 60(b), the district court ought to have examined the date that Russell mailed his motion. *See Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 585–86 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994).

Russell mailed his motion on January 20th, ten days after the district court's judgment had been docketed. Because this mailing accomplished the required service, Russell satisfied Rule 59(e)'s standards. Under the law of this circuit, his motion must be characterized as a motion to reconsider under Rule 59(e). *See United States v. Deutsch,* 981 F.2d 299, 301 (7th Cir.1992) (adopting bright-line test that all substantive motions served within 10 days of judgment would be treated under Rule 59); *Harcon Barge Co. v. D & G Boat Rentals, Inc.,* 784 F.2d 665, 669 (5th Cir.), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986) (same). The district court therefore erred in applying Rule 60(b)'s standards. Analysis ought to have proceeded under the guidelines applicable to Rule 59(e).

Had the district court correctly proceeded under Rule 59(e), it would have addressed the merits of Russell's argument. In his post-judgment motion, Russell pointed out that the district court erroneously relied upon Title VII's 180–day limitation in dismissing his complaint, and he requested that the district court proceed under the statute's 300–day limitations period. The EEOC soon joined as amicus, urging the same result.

■ Section 706(e) of Title VII generally requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. 42 U.S.C. § 2000e–5(e). However, if a claimant initially institutes proceedings with a state or local agency that possesses the authority to address the alleged discrimination, the time limit for filing with the EEOC is extended to 300 days. *Id. See also EEOC v. Commercial Office Products,* 486 U.S. 107, 111, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988); *Sofferin v. American Airlines, Inc.,* 923 F.2d 552, 553 (7th Cir.1991). The extended 300–day limitations period is ordinarily subject to a 60–day deferral period; a claimant, once filing with a state agency, cannot refile with the EEOC for 60 days unless state proceedings have been "earlier terminated." 42 U.S.C. § 2000e–5(c). In light of this 60–day deferral period, a claimant must ordinarily file with the appropriate state or local agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory practice. *Commercial Office Products,* 486 U.S. at 111, 108 S.Ct. at 1669. Even a failure to file within 240 days is not dispositive, however; a charge might still be timely filed if the state or local agency has terminated its proceedings prior to the expiration of the 300–day period. *Id.*

■ Russell filed his charge of discrimination with the EEOC 245 days after Delco Remy terminated his employment. He did so in Indiana, a state with a fair employment practices agency, the Indiana Civil Rights Commission (ICRC), which has the authority to pursue charges of discrimination. Ind. Code § 22–9–1–11. *See* 29 C.F.R. § 1601.74(a) (listing ICRC as a designated FEP agency). He is therefore plausibly able to benefit from Title VII's 300–day filing limitation—if he can demonstrate that the ICRC both initiated and terminated proceedings within that 300–day period. *See Sofferin,* 923 F.2d at 555. In order to make this showing, Russell and the EEOC point to the provisions of a worksharing agreement between the EEOC and the State of Indiana.

The impact that worksharing agreements in general have upon Title VII's filing periods is not a novel issue. Numerous courts have struggled with this issue and concluded, in different circumstances, that the provisions of various worksharing agreements operate to provide claimants with the benefit of the 300–day filing period. *See, e.g., Commer-*

*cial Office Products,* 486 U.S. at 114–15, 108 S.Ct. at 1670–71 (concluding that a state agency's waiver of a sixty-day deferral period pursuant to a worksharing agreement "terminated" its proceedings). *See also Worthington v. Union Pacific R.R.,* 948 F.2d 477, 483 (8th Cir.1991); *Trevino–Barton v. Pittsburgh Nat'l Bank,* 919 F.2d 874, 878–79 (3d Cir.1990); *EEOC v. Techalloy Md., Inc.,* 894 F.2d 676, 678 (4th Cir.1990); *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1479 (9th Cir.1989); *Griffin v. Air Prods. & Chemicals, Inc.,* 883 F.2d 940, 943 (11th Cir.1989). This court has in fact determined that the provisions of Illinois's worksharing agreement with the EEOC have such an effect. *Sofferin,* 923 F.2d at 559; *Hong v. Children's Memorial Hosp.,* 936 F.2d 967, 970–71 (7th Cir.1991), *cert. denied,* ––– U.S. ––––, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *Marlowe v. Bottarelli,* 938 F.2d 807, 812–13 (7th Cir.1991). It is therefore well within Russell's ability to prove that the provisions of Indiana's worksharing agreement simultaneously initiate and terminate state proceedings, ultimately providing him with the benefit of the 300–day limitations period. *Sofferin,* 923 F.2d at 559; *Hong,* 936 F.2d at 970; *Marlowe,* 938 F.2d at 812–13. *See also Shepherd v. Kansas City Call,* 905 F.2d 1152, 1153 (8th Cir.1990) (remanding for further proceedings to determine whether a worksharing agreement triggered application of the 300–day filing period).

■ He must first do so, however, before the district court. Worksharing agreements are to some degree particularized. At base, each embodies a particular state's intent regarding its relationship with the EEOC. *Marlowe,* 938 F.2d at 812–13 (adopting principles of contract interpretation to discern

the meaning of workshare agreements). It may be that boilerplate provisions will eventually come to characterize these arrangements, ultimately rendering analysis of individual agreements unnecessary. But at the present time, some fact-finding is necessary to determine the intended effect of Indiana's worksharing agreement with the EEOC. On remand, the district court should examine the relevant provisions of that agreement with a view to the standards we have previously enunciated in *Sofferin,* 923 F.2d 552, *Hong,* 936 F.2d 967, and *Marlowe,* 938 F.2d 807.

In holding that the district court's failure to address Russell's argument concerning application of the 300–day limitation was error, we remain aware of the general rule that motions for reconsideration should not be used to advance novel legal arguments. *See, e.g., Havoco of America, Ltd. v. Sumitomo Corp. of America,* 971 F.2d 1332, 1336 (7th Cir.1992). This general principle of avoiding waiver can give way, however, to an exception for a "manifest error of law." *Meyer,* 781 F.2d at 1268. We believe that exception is applicable in the instant case, despite Russell's initial failure to contest application of the 180–day limitations period.[2]

■ Reliance upon the 180–day limitations period, without inquiry into application of the 300–day period, was an abuse of discretion. Title VII's provisions are very well-established. Presumably, Indiana courts are aware of the existence of the Indiana Civil Rights Commission. These circumstances raised a fair question about the application of the 300–day limitations period. The district court ought to have conducted some inquiry in this regard. District courts are ordinarily

---

**2.** Russell was apparently uncounselled for some length of time while proceedings were ongoing in the district court. The record fails to indicate precisely how long Russell remained without an attorney; his pleadings are all signed by an attorney. However, it is clear that Russell failed to timely respond to Delco Remy's Request for Admissions. R. 52. Counsel suggested at oral argument that Russell did not have an attorney when he received the requests for admissions. At this point, the record is insufficient to allow us to explore what the precise import of Russell's failure to timely respond should be. The district

court concluded that it provided a basis for striking Russell's responses. R. 56. We believe that this finding is questionable without inquiry into the length of time that Russell remained without an attorney. Although he was not technically proceeding *pro se,* Russell's uncounselled status should be taken into consideration on remand. We note now, however, that Russell's failure to submit the worksharing agreement at this early point is not material for the same reason that his failure to urge application of the 300–day limitations period is not material.

accorded a large measure of discretion in denying motions to reconsider. *Highlands Ins. Co. v. Lewis Rail Service,* 10 F.3d 1247, 1249 (7th Cir.1993). But on the 59(e) motion at issue here, the district court's failure to inquire into application of Title VII's 300–day limitations period—a matter presumably frequently involved in employment litigation and well-known to Indiana's federal courts— was error.

In most circumstances, a litigant will be in the best position to direct a court's attention to applicable legal principles and standards. This ideal is reflected in the principle that Rule 59(e) "motions cannot be used to raise arguments which could, and should, have been made before judgment issued." *Meyer,* 781 F.2d at 1268. When rendering judgment, district courts should be able to assume that a litigant has fully stated his position; rules of waiver operate to enforce this result. However, unusual cases like this one may require us to make the obvious assumption that the district court possessed a sufficient awareness of the applicable law to render further inquiry necessary. Title VII's timing provisions should be familiar to district courts. A court should also be aware of the existence of a state agency which addresses discrimination claims. Here, these matters ought to have placed the district court on notice of the possible application of the 300–day filing period. Failure to inquire into that period on a Rule 59(e) motion was therefore error.

### III.

Because Russell served his post-judgment motion within 10 days of the judgment, the district court ought to have proceeded under Rule 59(e) standards. Under those standards, the district court abused its discretion by failing to explore possible application of the 300–day limitations period. On remand, the district court should examine Indiana's worksharing agreement with the EEOC to determine whether Russell can benefit from it.

VACATED and REMANDED.