**Joseph C. WELSH, Jr., Plaintiff,**

v.

**STATE OF NEBRASKA, NEBRASKA BRAND COMMITTEE, Defendant.**

**No. CV. 4.91–5016.**

United States District Court, D. Nebraska.

March 8, 1993.

---

R. Kevin O'Donnell, McGinley, Lane Law Firm, Ogallala, NE, for Joseph C. Welsh, Jr.

Charles E. Lowe, Atty. Gen., Lincoln, NE, for Nebraska Brand Committee, State of Nebraska.

## ORDER

STROM, Chief Judge.

This matter is before the Court on the report and recommendation of the magistrate judge (Filing No. 40), in which the magistrate judge recommends that defendant's motion for summary judgment as to plaintiff's Claims 1 and 3 be granted and denied in all other respects; and plaintiff's objection to the magistrate's report and recommendation (Filing No. 41).

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review with respect to the findings and recommendations, although the Court could have limited its inquiry to the grounds of the objections set forth in Filing No. 41.

The objection set forth in plaintiff's objection to the report is that the report is erroneous in that it sets forth in the last paragraph of page 2 that in spite of the Court's denial of the plaintiff's motion to compel production of certain personnel records, the defendant has produced the personnel records originally sought by plaintiff and a protective order was entered to preserve their confidentiality. The Court further notes that despite receiving the requested personnel records in September, 1992, plaintiff has not supplemented his response to the summary judgment motion. In response to this objection, defendant has filed the affidavit of Charles E. Lowe, defendant's counsel. That affidavit and the attached exhibit were filed on January 8, 1993. No response has been made thereto by counsel for plaintiff objecting to any of the statements or representations made in the affidavit. It appears to the Court that the objection of plaintiff is without merit and the report and recommendation of the magistrate judge not only contains a proper analysis of the facts but of the applicable law, and the Court finds the report and recommendation should be approved and adopted. Accordingly,

IT IS ORDERED:

1) The report and recommendation of the magistrate judge (Filing No. 40) is approved and adopted by the Court;

2) Defendant's motion for summary judgment is granted with respect to Claims 1 and 3 and denied in all other respects;

3) Plaintiff's Claims 1 and 3 are dismissed.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion for partial summary judgment, filing 14. For reasons discussed more fully below, I shall recommend defendant's motion be denied in part and granted in all other respects.

■ The purpose of a motion for summary judgment is to determine whether a "genuine issue of material fact" exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear that no genuine issue of material fact remains and the case may be decided as a matter of law. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### Background

This action involves alleged discriminatory employment practices by defendant Nebraska Brand Committee (hereinafter "Brand Committee" or "Committee") and is brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA).[1] Plaintiff is 66 years old and has been employed by the Committee as a brand inspector for the past 41 years. He has filed this action alleging the Brand Committee discriminated against him on the basis of his age by:

(1) failing to pay him additional compensation for training brand inspectors when younger employees who train brand inspectors are paid additional compensation for such duties;

2) refusing to provide plaintiff secretarial help when younger brand inspectors in plaintiff's position are afforded secretarial help;

(3) denying plaintiff advancement to the position of criminal investigator; and

(4) creating difficult working conditions by reducing the print size of the Nebraska Brand Book and supplements thereto.

Defendant has filed a motion seeking partial summary judgment on claims 1, 3 and 4. (Filing 14).

Before considering each claim individually, I first address plaintiff's preliminary argument that summary judgment should be denied in this matter due to a discovery dispute. (Plaintiff's Brief at 4). The focus of his argument centers around what was, at the time he submitted his brief in response to the summary judgment motion, a pending

---

1. Plaintiff also asserts, pursuant to this court's pendent jurisdiction, a state law claim for violations of Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age. *Neb.Rev.Stat.* §§ 48–1004 and 48–1009 (Reissue 1988).

motion to compel the production of certain Brand Committee personnel records. That motion to compel has been denied in all respects (*see* filing 33) and is no longer at issue in this case; however, following the denial of plaintiff's motion to compel, defendant produced the personnel records originally sought by plaintiff and a protective order was entered to preserve the confidentiality of those records outside of this litigation. (*See* filing 37). Despite receiving the requested personnel records in September, 1992, plaintiff has not supplemented his response to the summary judgment motion in any respect. Consequently, I do not view the resolved discovery dispute as grounds for denial of the motion for summary judgment.

### Claim 1

■ Plaintiff alleges the Brand Committee discriminated against him on the basis of his age by not providing him additional compensation for training brand inspectors. He alleges younger employees of the Committee are provided additional compensation for such training duties.

In support of the summary judgment motion, defendant has filed the affidavit of Arthur C. Thomsen, Executive Director and Chief Brand Inspector for the Nebraska Brand Committee. The affidavit speaks for itself:

[Plaintiff] is a Brand Inspector V and is the supervising full-time inspector stationed at Ogallala, Nebraska by the Committee.... [Plaintiff] has some duties in connection with the training of part-time or "intermittent" brand inspectors. These are the same duties for training part-time inspectors that *all* full-time brand inspectors (regardless of age) have from time-to-time [sic] in performing their work. *No* full time brand inspector (regardless of his or her age) receives additional compensation for performing duties in connection with the training of part-time brand inspectors.

(Filing 14, Thomsen Affidavit at 2–3). Mr. Thomsen goes on to explain that plaintiff, as a Brand Inspector V, was not and is not responsible for training full-time brand inspectors:

[The] training of full-time brand inspectors takes place at training centers established by the Committee at Kearney, Lexington, Scottsbluff/Gering and McCook, Nebraska. These training centers were created by the Nebraska Brand Committee in 1971. Ogallala has never been designated as a training center for full-time brand inspectors by the Committee and [plaintiff] has never been assigned to a training center to train full-time inspectors.... Each newly-hired full-time brand inspector is required to attend one of the training centers for training even if he or she has previously worked as an intermittent brand inspector and has received on-the-job training from a full time brand inspector such as [plaintiff].... Those brand inspectors charged with training full-time brand inspectors at the training centers in Kearney, Lexington, Scottsbluff/Gering and McCook are designated as "Brand Inspector VI," and they do receive more compensation than brand inspectors, such as [plaintiff], who are designated as "Brand Inspector V." [Plaintiff] is the highest paid Brand Inspector V in the state.

(Filing 14, Thomsen Affidavit at 3). Through evidence presented in this affidavit that plaintiff is not being treated disparately in connection with compensation for training brand inspectors, defendant has met the initial burden of establishing the nonexistence of a genuine issue as to this claim, and the burden shifts to the plaintiff to produce evidence of the existence of a genuine issue for trial.

Plaintiff does not attempt to contradict the information contained in the Thomsen affidavit, and he has failed to offer any evidence sufficient to establish the existence of a genuine issue of material fact with respect to this claim.[2] I conclude this "complete failure of

---

2. Plaintiff's affidavit essentially reiterates his complaint by stating that:

he has continually over a period of years trained Brand Inspectors in a complete and

full manner, said Brand Inspectors being fully capable of performing brand inspection whether assigned full-time, part-time or intermittent duties.... [Y]our affiant further states that he

proof" concerning any disparate treatment in connection with compensation for training brand inspectors entitles defendant to judgment as a matter of law with respect to plaintiff's first claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). I shall so recommend.[3]

### Claim 3

■ Plaintiff alleges the Brand Committee discriminated against him on the basis of his age by denying him advancement to the position of Criminal Investigator. He alleges younger employees of the Committee have received such an advancement.

In support of the summary judgment motion, defendant offers the affidavit of Mr. Thomsen, who states that because the Brand Committee has only four criminal investiga-

tors, there have been only five openings for the position since 1970.[4] Plaintiff did not apply for the openings which occurred in 1970, 1972 or 1975, and although he did apply for the opening in 1986, he withdrew his application before interviews for the position were conducted:

> When [plaintiff] withdrew his application in 1986 [he] indicated that he did not want to relocate from Ogallala. Such a relocation would have been required, since the committee wanted the criminal investigator to be located in the Scottsbluff/Gering area.

(Filing 14, Thomsen Affidavit at 4). Plaintiff admits he withdrew his application in 1986 prior to the date interviews were conducted because he did not want to relocate from Ogallala to the Scottsbluff/Gering area. (Filing 16, Welsh Deposition at 44:14–45:9).[5]

---

continues to train such Brand Inspectors as of the date of this Affidavit.

(Filing 19, Welsh Affidavit at 1). This statement does nothing to refute or call into question evidence presented by plaintiff that plaintiff, a Brand Inspector V, trains only part-time brand inspectors, and, like all others who train part-time inspectors, is not provided additional compensation for such training duties. Plaintiff's deposition testimony indicates that he is aware the brand inspectors who receive additional compensation for training have all attained the level of Brand Inspector VI and work out of one of the designated training centers. (Filing 16, Welsh Deposition at 25:10–29:14). While I do not dispute plaintiff's assertion that he trains brand inspectors in a "complete and full manner" so that they are "capable" of performing brand inspections regardless of whether they work full- or part-time, his affidavit does not suggest that plaintiff trains full-time brand inspectors; rather, it suggests that plaintiff believes the inspectors he trains are capable of working as full-time inspectors without additional training.

Furthermore, the statement in plaintiff's affidavit suggesting that Ogallala has been "identified" as a training center in a document published by defendant does little to provide support for plaintiff's position. First, I note that although plaintiff has attached to his affidavit a photocopy of the document to which he refers (Filing 19, Welsh affidavit, attachment 1) the document has not been authenticated as required by Local Rule 20(A)(2). More importantly, however, I note that under the circumstances it makes no difference whether Ogallala is a Nebraska Brand training center. Plaintiff is a Brand Inspector V, not a Brand Inspector VI (*see* Filing 16, Welsh Deposition at 7:21–8:1) and evidence presented by defendants—and not refuted by plaintiff—indicates that only those inspectors designated as Brand Inspector VI train full-time inspectors and are

provided additional compensation for such duties. Plaintiff admits he has never applied for the position of Brand Inspector VI, despite receiving announcements for such openings. (Filing 16, Welsh Deposition at 29:10–14, 30:21–23, 31:11–17).

3. Because the Nebraska Supreme Court has expressly adopted the burden and method of proof applied by federal courts to claims arising under the ADEA for purposes of construing claims under the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, *see Allen v. AT & T Technologies, Inc.,* 228 Neb. 503, 423 N.W.2d 424 (1988), my recommendation that summary judgment be granted with respect to plaintiff's first claim applies to both his federal and state law claims.

4. Openings for criminal investigator occurred in 1970, 1972, 1975, 1986 and 1991. (Filing 14, Thomsen Affidavit at 4).

5. Plaintiff retorts, however, that on other occasions younger employees have not always been required to relocate in connection with advancement to the position of criminal investigator; thus, he argues, requiring him to relocate discriminated against him on the basis of his age. (Plaintiff's Brief at 5; Filing 19, Welsh Affidavit at 1). However, plaintiff offers no evidence in support of his broad contention that younger employees have not always been required to relocate when accepting a promotion to criminal investigator.

Defendant, on the other hand, offers evidence specifically indicating that the successful applicants in 1975 and 1986 were both required to relocate in order to assume the position of criminal investigator. (Filing 14, Thomsen Affidavit at

Plaintiff also indicated interest in an opening for criminal investigator that occurred in 1991,[6] but he failed to complete and submit the necessary forms required of all applicants. Specifically, plaintiff would not agree to attend the Nebraska Law Enforcement Training Center if promoted to criminal investigator. (Filing 14, Thomsen Affidavit at 4–5, Exhibits E, F and G; Filing 16, Welsh Deposition at 49:8–49:11). Because Nebraska Statute requires that all law enforcement officers [7] successfully complete a training program administered by the Nebraska Commission on Law Enforcement and Criminal Justice, see *Neb.Rev.Stat.* § 81–1414(2) (Reissue 1987), and because plaintiff would not agree to attend such training, he was not eligible to be considered for the position. (Filing 14, Thomsen Affidavit at 4–5; Exhibits E and F).[8]

■ To establish a prima facie case of age discrimination, a plaintiff must generally demonstrate four elements: (1) that he or she is a member of the protected age group; (2) that he or she meets the minimum qualifications for the position; (3) that he or she suffered some sort of adverse employment action; and (4) that the employer continued to try to fill the position from among applicants with plaintiff's qualifications. *Hase v. Missouri Div. of Employment*, 972 F.2d 893, 895 (8th Cir.1992).[9]

4). Additionally, exhibits attached to the Thomsen affidavit indicate that when Brand Committee employees were notified of openings for criminal investigator in 1970, 1972, 1975 and 1986, the notices contained information suggesting that the successful applicant would be required to move if he or she did not live in the area where Nebraska Brand intended to place the criminal investigator. (Filing 14, Exhibits A, B, C and D). While it may well be that on occasion a successful applicant has been fortunate enough to live in the area where the Brand Committee planned to place the criminal investigator, plaintiff has presented no evidence suggesting that the relocation requirement has been ignored with respect to younger applicants.

6. Plaintiff's deposition indicates that although the Brand Committee accepted applications for this criminal investigator position in 1991, the position would not be open until January of 1993. (Filing 16, Welsh Deposition at 48:2–14).

7. Law enforcement officers are defined by statute as "any person who is responsible for the prevention or detection of crime or the enforcement of the penal, traffic, or highway laws of the state . . . and is authorized to make arrests." *Neb.Rev. Stat.* § 81–1401(3)(a) (Reissue 1987). Defendant's brief indicates that Nebraska Brand Criminal Investigators have arrest powers and serve as deputy sheriffs. (Defendant's Brief at 18).

8. Plaintiff admits that he would not agree to undergo training at the Law Enforcement Training Center (Filing 16, Welsh Deposition at 52:1–8), but argues that in the past, younger Nebraska Brand employees have not always been required to undergo law enforcement training due to the grandfather clause provision of the statute. See *Neb.Rev.Stat.* § 81–1414(1) (Reissue 1987) (law enforcement officers already serving under permanent appointment as of January 1, 1972, are not required to participate in mandatory training). Plaintiff contends that because Nebraska Brand did not allow him to utilize the grandfa-

ther clause to avoid the training requirement, he is being discriminated against on the basis of his age. This argument is meritless.

The requirement that plaintiff attend the Law Enforcement Training Center in order to be promoted to criminal investigator is not a policy of the Brand Committee, it is a statutory requirement. Despite plaintiff's requests to have the grandfather clause applied to him, he does not qualify for such an exemption under the statute because he was not a law enforcement officer in 1972. *Neb.Rev.Stat.* § 81–1414(1). Furthermore, exhibits attached to the Thomsen affidavit indicate that the "younger" employees who plaintiff alleges were not required to undergo law enforcement training when promoted to criminal investigator had each been certified as law enforcement officers before 1972, and thus were exempted from the statutory training requirement under the grandfather clause of section 81–1414(1). (Filing 14, Thomsen Affidavit, Exhibit F). After 1972, every Nebraska Brand employee promoted to the position of criminal investigator has attended the Nebraska Law Enforcement Training Center, as required by statute. (*Id.*) The statutory requirement that law enforcement officers attend the Nebraska Law Enforcement Training Center does not evidence age discrimination, nor is such discrimination evidenced by the fact that plaintiff does not qualify for exemption from such training under the statute's grandfather clause.

9. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court established a three-step framework under which to analyze employment discrimination claims based upon disparate treatment. "Although *McDonnell Douglas* and *Burdine* dealt specifically with actions under Title VII, the guidelines they established are generally applicable to age discrimination claims as well." *Hase v. Missouri Div. of Employment*, 972

Plaintiff has failed to establish a prima facie case of age discrimination. Under the circumstances, he neither met the minimum qualifications for advancement to criminal inspector, nor did he suffer an adverse employment decision. By his own admission, plaintiff never completed the application process for promotion to criminal investigator. (Filing 16, Welsh Deposition at 44:14–45:9; 49:8–49:11; 52:1–8). He did not apply for openings that occurred in 1970, 1972 or 1975. (Filing 14, Thomsen Affidavit at 4). He withdrew his application prior to interviews in 1986 (Filing 16, Welsh Deposition at 44:14–45:9; Filing 14, Thomsen Affidavit at 4), and in 1991 he refused to agree to attend the Nebraska Law Enforcement Training Center if promoted to criminal investigator—a statutory prerequisite for such a promotion. (Filing 14, Thomsen Affidavit at 4–5, Exhibits E, F and G; Filing 16, Welsh Deposition at 49:8–49:11; 52:1–8). Plaintiff having failed to "make a sufficient showing on an essential element of his case with respect to which he has the burden of proof," *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552, defendant is entitled to summary judgment with respect to this claim.[10] *Id.*

### Claim 4

Plaintiff alleges the Brand Committee discriminated against him on the basis of his age by reducing the print size of the Nebraska Brand Book and supplements thereto.[11] Although not clearly argued by plaintiff, it appears from his complaint and deposition testimony that he contends the reduction in print size was designed to make it more difficult for older employees to perform their job, thereby encouraging retirement.[12] Plaintiff's deposition contains a number of references to statements made by Brand Committee management regarding the high cost of the benefits paid to older employees, the burden such benefits place on the Nebraska Brand Committee, and the financial benefit to the Committee once older employees retire. (Filing 1 at 2; Filing 16, Welsh Deposition at 38:8–42:20).

Defendant presents two arguments in support of summary judgment on this claim. First, he argues that plaintiff's fourth claim is time barred under the ADEA; second, he argues that the issuance of a Brand Book with smaller print was not discriminatory, but rather was based on legitimate business concerns.

### Statute of Limitations

Defendant argues that the most recent issue of the Nebraska Brand Book was mailed to plaintiff on October 23, 1989. Defendant admits the 1989 Brand Book contained smaller print (Filing 14, Thomsen Affidavit at 5), but argues that because plaintiff's employment discrimination charge was not filed with the Equal Employment Opportunity Commission (EEOC) until March 5, 1991, his ADEA claim is time barred—charges having been filed more than 300 days after the Brand Book was mailed.

---

F.2d at 896. Under the first stage of the *McDonnell Douglas–Burdine* framework, the plaintiff has the burden of production to establish a prima facie case of discrimination. If the plaintiff meets this burden, the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment decision. If the defendant meets this burden, the case proceeds to the third stage of analysis, and the plaintiff must demonstrate that the defendant's proffered reason is pretext and unworthy of credence. *Hase v. Missouri Div. of Employment*, 972 F.2d at 896 (citing *Burdine*, 450 U.S. at 253–56, 101 S.Ct. at 1092–95; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824).

10. Because the Nebraska Supreme Court has expressly adopted the burden and method of proof applied by federal courts to claims arising

under the ADEA for purposes of construing claims under the Nebraska Act Prohibiting Unjust Discrimination in Employment Because of Age, *see Allen v. AT & T Technologies, Inc.*, 228 Neb. 503, 423 N.W.2d 424 (1988), my recommendation that summary judgment be granted with respect to plaintiff's third claim applies to both his federal and state law claims.

11. Defendant explains that the Nebraska Brand Book and supplements are distributed to all brand inspectors and are "the basic working tools of such inspectors." (Filing 14, Thomsen Affidavit at 5).

12. This interpretation of plaintiff's claim is consistent with the claim presented to the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission. *See* Filing 14, Exhibit H at 3).

To maintain an employment discrimination action under the ADEA, a timely charge must be filed with the Equal Employment Opportunity Commission (EEOC). 29 U.S.C. § 626(d). Complaints of unlawful employment practices generally must be filed with the EEOC within 180 days of the alleged discriminatory act; however, in deferral states such as Nebraska,[13] (where state or local agencies have authority to grant relief from such employment practices), the complaint need not reach the EEOC until 300 days after the occurrence of the challenged act. *See* 29 U.S.C. § 626(d)(2).[14]

Even accepting that plaintiff received the 1989 Nebraska Brand Book on or about October 23, 1989, I cannot unequivocally accept that date as the only date upon which the alleged unlawful employment practice occurred. The Brand Book is supplemented weekly with updated information on transferred brands. (Filing 14, Thomsen Affidavit at 5).[15] These weekly supplements are distributed to brand inspectors, who in turn utilize the supplements to bring the information in the Brand Book up to date. (Filing 14, Thomsen Affidavit at 5; Filing 16, Welsh Deposition at 59:5–22). Thus, although it is not incorrect to argue that an alleged unlawful employment practice occurred on the date the Brand Book was received by plaintiff, it likewise is plaintiff's contention that each and

every weekly supplement to the Nebraska Brand Book was an independent violation which continued up to and through the filing of EEOC charges. (Plaintiff's Brief at 5).[16]

Courts have held that if an ADEA violation is of a continuing nature, a charge of discrimination filed with the appropriate agency may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the alleged violation or within the statutory period. *See Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1017–18 (1st Cir.1979) (and cases cited therein), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980). *See also Macellaro v. Goldman,* 643 F.2d 813, 815 (D.C.Cir.1980) (where there exists a continuous chain of discrimination, courts have treated the entire course as a continuing statutory violation). However, to state a "continuing" violation:

> a complaint must indicate that not only the injury, but the discrimination, is in fact ongoing.... A continuing violation is not stated if all that appears from the complaint is that the plaintiff continues to suffer from the ongoing effects of some past act of discrimination.

*Goldman v. Sears, Roebuck,* 607 F.2d at 1018. *Accord Macellaro v. Goldman,* 643 F.2d at 815–16 (quoting *United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885,

---

13. Nebraska is a deferral state, and the NEOC is the deferral agency. *See Neb.Rev.Stat.* §§ 48–1101 to 48–1126 (Reissue 1988 & Supp.1990); *E.E.O.C. v. Shamrock Optical Co.,* 788 F.2d 491 (8th Cir.1986).

14. As the Eighth Circuit Court of Appeals recently explained in the analogous context of Title VII:

> In a deferral state such as Nebraska, [timely filing] requires the filing of the charge within 300 days of the alleged act of discrimination.... [A] state deferral agency, such as the NEOC, has a 60-day period in which it has the exclusive right to initially process discrimination charges. Consequently, regardless of whether the charge is initially presented to the EEOC or the state deferral agency, the charge is not deemed filed with the EEOC until the expiration of 60 days or until the state agency terminates its proceedings or waives its exclusive right to process the charge, whichever is earliest.... Regardless of which of these three events triggers "filing" with the EEOC, the filing still must occur within the 300 day period.

*Worthington v. Union Pacific R.R.,* 948 F.2d 477, 479 (8th Cir.1991).

15. Although defendant suggests the print size in the supplements is "somewhat" larger than the print size in the 1989 Nebraska Brand Book (Filing 14, Thomsen Affidavit at 5–6), plaintiff alleges the print in both the book and the supplements has been reduced and is difficult to read. (Filing 1 at 2–3). *See also* Filing 16, Welsh Affidavit at 60:15–61:1.

16. Additionally, plaintiff's EEOC charge challenged the reduced print size as an ongoing violation:

> Supplemental printouts of the Nebraska Brand Book have been reduced substantially in print size.... I believe that this was done for no work related reason other than to make the job more difficult for older individuals which would include myself.
> All the above-stated conditions are ongoing and exist at the date of the signing of this complaint.

(Filing 14, Exhibit H at 3).

1889, 52 L.Ed.2d 571 (1977) (to determine whether violation is continuing, emphasis should be placed not only on continuity, but on whether any present violation exists)).

In this instance, plaintiff has alleged the print size in the Nebraska Brand Book *and the weekly supplements thereto* has been reduced in an attempt to make it more difficult for older brand inspectors to perform their daily duties. Although the most recent issue of the Nebraska Brand Book was received by plaintiff on or about October 23, 1989, the supplements thereto continue to arrive weekly, and apparently were arriving weekly at the time plaintiff filed his EEOC charge as well. (Filing 14, Exhibit H at 3). Accordingly, I conclude plaintiff has alleged a continuing violation with regard to the reduced print size and the EEOC charge with respect to this claim was timely filed.

*Print Reduction Not Discriminatory*

■ Defendant argues that plaintiff "will be unable to present sufficient evidence" to show that the issuance of the Brand Book and supplements with smaller print "was or is discriminatory." (Defendant's Brief at 22). Specifically, defendant suggests that because the Brand Book and supplements are issued to all brand inspectors regardless of age, and because there are legitimate business concerns supporting the decision to issue a Brand Book with reduced print size, plaintiff will be unable to prove any discrimination and this claim should be dismissed. I disagree.

To withstand a motion for summary judgment, plaintiff need not prove an issue of material fact in his favor; all that is required under Rule 56(c) is sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact. *Hase v. Missouri Div. of Employment*, 972 F.2d 893, 895 (8th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). In this instance, plaintiff alleges that the reduction in print size was designed to make it more difficult for older employees to perform their job, thereby encouraging retirement. (Filing 1 at 2–3; Filing 16, Welsh Deposition at 38:8–42:20; Filing 14, Exhibit H at 3). Defendant argues the reduction in print size

was done to make the Brand Book smaller, easier to carry and to reduce production costs. (Defendant's Brief at 22; Filing 14 at 5). Because I conclude there is sufficient evidence of a factual dispute to require resolution by a trier of fact, I shall recommend defendant's motion for summary judgment be denied with respect to plaintiff's fourth claim.

IT THEREFORE HEREBY IS RECOMMENDED pursuant to 28 U.S.C. § 636(b)(1)(B), that defendants' motion for partial summary judgment (filing 14) be granted with respect to claims 1 and 3 as discussed above, and denied in all other respects.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated December 22, 1992.