**Robert REICH, Secretary of the United States Department of Labor, Plaintiff,**

v.

**Arthur McMANUS and Richard Covelli, Defendants.**

**No. 94 C 3346.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 1995.

Opinion Granting Reconsideration April 26, 1995.

Leonard A. Grossman, U.S. Dept. of Labor, Office of the Solicitor, Chicago, IL, Stacey E. Elias, U.S. Dept. of Labor, Office of Solicitor, Washington, DC, for plaintiff.

Nathan H. Lichtenstein, Andrew Scott Williams, Melvin A. Blum, Aronberg, Goldgehn, Davis & Garmisa, Chicago, IL, for defendants.

*MEMORANDUM OPINION
AND ORDER*

ASPEN, District Judge:

Plaintiff Robert Reich, Secretary of the United States Department of Labor ("Secre-

tary"), brings this three count complaint against defendants Arthur McManus and Richard Covelli alleging violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Presently before us is defendants' motion for summary judgment.[1] For the reasons set forth below defendants' motion is granted in part and denied in part.

## I. Background [2]

Defendants are licensed brokers of insurance, annuities and private securities. In addition to their sales activities, defendants were owners of Pension Administrators, Inc. ("PAI"), a company which provided administrative services to pension plans. Plaintiff contends that through PAI, defendants established and served many pension and benefit plans from 1981 to 1987. Although defendants assert that they were never employed by PAI, and that co-owner Terrence Ronczkowski and his staff performed all of the pension related services for PAI's clients, defendants did act as liaisons between PAI and the trustees of numerous pension plans. These plans included Dressel's Ace Hardware, Inc. Profit Sharing Plan, the Emco Gears Pension Plan, the Supreme Cartage & Air Cargo Service, Inc. Defined Benefit Pension Plan, the Battery Service Corporation Money Purchase Pension Plan, the Battery Service Corporation Pension Plan, and the Tu–Kaiz Litho, Inc. 401(k) Plan (collectively, "the Plans").

In April 1987, defendants sold their interests in PAI to Ronczkowski and resigned as officers and directors. The following month, defendants offered to the trustees of the Plans the opportunity to invest in the 2010 Building Limited Partnership ("2010 Partnership"). At the time they created the 2010 Partnership, defendants were both owners of the medical professional building that was to be purchased by the partnership, as well as directors and officers of a general partner of the 2010 Partnership. This information, as well as other critical data, was included in an offering memorandum for the 2010 Partner-

---

1. Although defendants' motion is actually framed as one to dismiss or, in the alternative, for summary judgment, the parties have treated it as one for summary judgment. Consequently, we do the same.

2. These facts are gleaned from the statements of the parties submitted pursuant to General Rule 12 of the United States District Court for the Northern District of Illinois.

ship which defendants claim was distributed to all prospective investors in May 1987. However, the Secretary contends that some of the trustees did not receive this memorandum until after they had actually invested plan assets in the project. Additionally, the Secretary asserts that none of the trustees read the offering memorandum before investing in the 2010 Partnership, but rather, they relied upon the defendants' representations and advice when deciding whether to invest. Subsequently, all of the trustees invested plan assets in the 2010 Partnership.

In 1988, defendants created the Fox Trails Limited Partnership ("Fox Trails Partnership") and offered the trustees an opportunity to invest. The Secretary claims that pursuant to defendants' advice, the Battery Service Corporation Money Purchase Pension Plan, the Battery Service Corporation Pension Plan, and the Supreme Cartage & Air Cargo Service, Inc. Defined Benefit Pension Plan invested in the Fox Trails Partnership, although the remaining Plans did not.

In 1990, defendant McManus formed the Crystal Lake Avenue Limited Partnership ("Crystal Lake Partnership") in order to develop approximately 20 acres of real estate in Crystal Lake, Illinois. In conjunction with the Crystal Lake Partnership offering, McManus entered into a joint venture agreement with Calia Development Corporation in order to construct improvements and single-family homes on the property. According to the joint venture agreement and offering memorandum concerning the partnership, the real estate in question would be owned by the Crystal Lake Partnership. However, the partnership would not be included in the joint venture with McManus and Calia and would not participate in its management. Rather, the McManus–Calia joint venture would purchase the developed property on a lot-by-lot basis from Crystal Lake Partnership when it was sold to retail customers. McManus issued an offering memorandum concerning Crystal Lake Partnership, and the Emco Gears Pension Plan, the Tu–Kaiz Litho, Inc. 401(k) Plan and the Supreme Cartage & Air Cargo Service, Inc. Defined Benefit Pension Plan invested in the project. As with the 2010 Partnership, the Secretary contends that at least some of the trustees did not read the offering memorandum, but rather, invested plan assets into Crystal Lake Partnership based solely on defendants' representations.

Plaintiff alleges that defendants have engaged in prohibited transactions under ERISA. See 29 U.S.C. § 1106. First, plaintiff contends that defendants were fiduciaries to the Plans with respect to the offerings of the 2010 Partnership, Fox Trails Partnership and Crystal Lake Partnership, see 29 U.S.C. § 1002(21), and therefore were prohibited from self-dealing with the Plans. See 29 U.S.C. § 1106(b). The Secretary also alleges that defendant McManus was a fiduciary to some of the Plans by dint of his position as general partner of Crystal Lake Partnership—an entity which contained "plan assets." Finally, plaintiff contends that defendants are "parties in interest" because they provided administrative services to the Plans through PAI, see 29 U.S.C. § 1002(14), and thus are liable for self-dealing with the plans. See 29 U.S.C. § 1106(a).

Defendants have moved for summary judgment, arguing that the evidence shows they were not ERISA fiduciaries or parties in interest with regard to the Plans. In support of their motion, defendants have submitted declarations from the still living trustees of the Plans. Each of these declarations states (in near boilerplate language) that the trustee made his own independent investment decisions with regard to his Plan and did not simply "rubber stamp" the defendants' recommendations. Further, with regard to the Dressel's Ace Hardware, Inc. Profit Sharing Plan, defendants state in their own declarations that they simply acted as salesmen and that the plan trustee (who is now deceased) made the decision to invest in the 2010 Partnership after receiving the offering memorandum and discussing the investment with McManus. Defendant McManus also argues that because Crystal Lake Partnership is a "real estate operating company," he is not an ERISA fiduciary with regard to the plans that invested in that project. See 29 C.F.R. § 2510.3–101(e). Finally, defendants contend that they did not provide any administrative services to the

Plans that would qualify them as "parties in interest." In response, plaintiff has submitted the affidavit of Cheryl Leppert, a Department of Labor investigator, who had previously interviewed the same trustees that have submitted declarations in support of defendants' motion. Plaintiff's investigator claims that during these interviews the trustees told her, *inter alia*, that they relied on the defendants' advice to a large extent when making investment decisions concerning their plans; that they were unaware that defendants had sold their interest in PAI; and that at least one of the Plans had invested all of its assets in accord with defendant Covelli's recommendations. Moreover, plaintiff suggests that at the time the trustees made the declarations introduced by the defendants, they were under the misconception that the Secretary was seeking to hold them responsible for financial problems involving the Plans. Finally, the Secretary argues that because defendants' motion was filed before answering the complaint, and prior to the exchange of substantial discovery, we should deny defendants' motion under Fed. R.Civ.P. 56(f).

## II. Summary Judgment Standard

■ A motion for summary judgment will be granted if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Although "[a] motion for summary judgment cannot be de-

feated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit," *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988), specific attacks on an affiant's credibility with regard to central issues in a case can be sufficient to deny a motion for summary judgment. *See In the Matter of Guglielmo*, 897 F.2d 58, 63 (2d Cir.1990) (summary judgment inappropriate where affiant's deposition testimony on central issue contradicted his affidavit).

## III. Discussion

### A. Fiduciary Status

■ Defendants contend that they were not ERISA fiduciaries with regard to the Plans. In addition to those specifically named as fiduciaries, ERISA holds a person responsible as a fiduciary of a plan if:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In furtherance of ERISA's remedial purposes, the term "fiduciary" is construed liberally and according to an objective standard. *Farm King Supply, Inc. Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 291–92 (7th Cir.1989). However, persons falling under any one of these three definitions are held responsible as fiduciaries only to the extent they performed these functions. *See Associates in Adolescent Psychiatry, S.C. v. Home Life Ins. Co. of New York*, 729 F.Supp. 1162, 1179 (N.D.Ill.1989), *aff'd*, 941 F.2d 561, 569 (7th Cir.1991), *cert. denied*, 502 U.S. 1099, 112 S.Ct. 1182, 117 L.Ed.2d 426 (1992).

■ Defendants argue that they cannot be considered fiduciaries under § 1002(21)(A)(i), (iii) because each trustee states in his declaration that he did not automatically follow

the defendants' recommendations. Further, each trustee asserts that he alone had the discretion to make investment decisions for the plan, and that he understood the defendants to be acting simply as salesmen. To be sure, absent any other evidence these declarations would be sufficient to permit a finding in defendants' favor as to plaintiff's claims under § 1002(21)(A)(i), (iii). *See Associates in Adolescent Psychiatry*, 941 F.2d at 569–70 (financial consultants and designers of ERISA benefit plan are not fiduciaries unless they have control over plan); *cf. Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535–37 (7th Cir.1991) (actuaries who advise trustees of an ERISA plan are not fiduciaries).

■ However, plaintiff introduces evidence that the trustees previously had made substantially different statements to its investigator about defendants' conduct.[3] For example, Leppert states that the trustee of the Dressel plan said that McManus was the sole financial consultant to the plan from 1978 to 1989, and that investment decisions were based exclusively on his advice. Indeed, in a 1985 letter to that trustee, McManus stated that if the trustee chose not to follow his recommendations then he should look for a new "financial consultant."

Similarly, all of the other trustees indicated to Leppert that they relied exclusively on defendants' investment advice and that most (if not all) of their plans' funds were placed in investments recommended by defendants. For example, the trustee of the Supreme Cartage & Air Cargo Services, Inc. Defined Benefit Pension Plan told Leppert that McManus told him which investments to purchase, how much money to put in, and which sources of plan funds to use.

Other factors suggest that the relationship between defendants and the trustees was different from that portrayed by defendants. The Plans were all created by PAI and defendants continued to act as liaisons between PAI and the trustees. Some trustees indicated to Leppert that they never received offering memoranda before investing in the 2010 Partnership, the Fox Trails Partnership or the Crystal Lake Partnership. Others said they did receive the information, but did not read it before investing funds pursuant to defendants' recommendations. Although professionals do not become fiduciaries simply by providing services, a professional that exerts an unusual degree of influence over a plan can be held accountable as an ERISA fiduciary. *See Pappas*, 923 F.2d at 538; 29 C.F.R. § 2509.75–5 (under certain circumstances professionals can be considered fiduciaries). The Secretary's submissions seriously undermine defendants' contention that they did not exercise significant control or authority over the management, distribution or administration of the plans. The question of whether a person has demonstrated actual authority over a plan is highly factual in nature, *see Pappas*, 923 F.2d at 538, and defendants' have failed to establish the absence of any material factual dispute on that critical issue. Furthermore, granting defendants' motion would require us to make credibility determinations as to the trustees and plaintiff's investigator, a task distinctly unsuitable at the summary judgment phase. *See AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir.1993). Accordingly, we deny defendants' motion as to their fiduciary status under § 1002(21)(A)(i), (iii).

■ Similarly, we cannot conclude that defendant McManus is entitled to summary judgment on the Secretary's claims stemming from his control over the assets of the Crystal Lake Partnership. Department of Labor regulations define plan assets to include plan investments in an equity position of an entity—other than an operating company—that is neither publicly traded nor registered pursuant to the Investment Company Act of 1940. 29 C.F.R. § 2510.3–101(a)(2). "Therefore, any person who exercises author-

---

3. We previously denied defendants' motion to strike the investigator's affidavit. Although many of the statements contained in the affidavit would be hearsay if offered for the truth of the matters asserted, the Secretary argued in response to the motion to strike that the information was not offered for its truth, but to impeach the declarations of the trustees. We therefore consider the investigator's statements not for their truth, but simply to impeach the credibility of the trustees.

ity or control respecting the management or disposition of such underlying assets, and any person who provides investment advice with respect to such assets for a fee (direct or indirect), is a fiduciary of the investing plan." *Id.* The Secretary argues that as general manager of Crystal Lake Partnership, McManus is a fiduciary to the plans that invested in that operation.

McManus maintains that because Crystal Lake Partnership is a "real estate operating company," he is not automatically a fiduciary. *See* 29 C.F.R. § 2510.3–101(c) (term "operating company" includes "real estate operating company"). A real estate operating company is an entity with at least 50% of its assets invested in real estate that is managed or developed, so long as the entity substantially participates directly in those management or development activities. 29 C.F.R. § 2510.3–101(e). McManus states in his declaration that he has substantially participated in the management and development of the Crystal Lake property, including the subdividing of the land, mortgaging the property to finance improvements, hiring contractors and approving building plans. However, the Secretary contends that McManus took such steps solely as a member of the joint venture between himself and Calia Development, not as general manager of the partnership. In support, plaintiff points to the offering memorandum and a summary description of the Crystal Lake Partnership, which state:

> The [Crystal Lake] Partnership is not to participate in the development of the Property, which shall be undertaken by a joint venture between Arthur F. McManus and Calia Development Corp. (the "Joint Venture").

McManus argues in response that the regulations permit a real estate operating company to hire independent contractors to conduct day-to-day activities without becoming an ERISA fiduciary, *see* 29 C.F.R. § 2510.3–101(j)(8), and therefore the partnership's hiring of the McManus–Calia joint venture to develop the property does not make him a fiduciary. However, given the language of the offering memorandum and summary description, we cannot conclude that McManus was actually hired as an independent contractor by the partnership; rather, he might have been hired only by the joint venture. Faced with such inconclusive evidence, it is apparent that McManus cannot demonstrate that he is entitled to judgment as a matter of law on this issue. Consequently, we deny his motion for summary judgment as to his liability under § 1002(21)(A)(i), (iii).

Finally, we address the Secretary's claims under 29 U.S.C. § 1002(21)(A)(ii), which require defendants to have rendered investment advice to the Plans for a fee or other compensation. The parties spend a considerable portion of their briefs arguing about whether defendants gave "investment advice" to the Plans.[4] However, the defendants and the trustees all state that McManus and Covelli were not paid any sort of fee or compensation by the Plans for their services; rather, they were paid commissions on the sales made to their clients. The Secretary does not introduce any evidence directly challenging the veracity of this fact; indeed, plaintiff's investigator also asserts that defendants were compensated through commissions. Absent some indication that defendants were paid "a fee or other compensation, direct or indirect" by the Plans themselves, they cannot be considered fiduciaries under § 1002(21)(A)(ii). *American Federation of*

---

4. In that regard, the parties focus on whether defendants' conduct fell under the definition advocated by the Department of Labor:

> [a] person shall be deemed to be rendering "investment advice" to an employee benefit plan within the meaning of [§ 1002(21)(A)(ii)] only if:
> (i) such person renders advice to the plan as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property; and
> (ii) such person directly or indirectly ...

> (B) renders any advice ... on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan ... that such services will serve as a primary basis for investment decisions ... and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.
> 29 C.F.R. § 2510.3–21(c)(1).

*Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc.,* 841 F.2d 658, 664 (5th Cir.1988) (salesman who only received commissions not liable for giving investment advice); *cf. Harris Trust & Sav. Bank v. Salomon Bros., Inc.,* 813 F.Supp. 1340, 1344 (N.D.Ill.1992) (plaintiff's claim that advisor retained 5% interest in security as compensation satisfied § 1002(21)(A)(ii)). Accordingly, without deciding whether defendants dispensed "investment advice," we grant their motion for summary judgment as to § 1002(21)(A)(ii).[5]

### B. *"Party in Interest"*

The Secretary also alleges that defendants are liable under 29 U.S.C. § 1106(a), which prohibits, *inter alia,* a fiduciary from causing plan assets to be used in a transaction between the plan and a "party in interest." A party in interest with a plan includes a fiduciary and "a person providing services to such plan." 29 U.S.C. § 1002(14)(B). Defendants contend that at worst they merely provided liaison and "follow through" services to the Plans, and thus were not "parties in interest" with the plans under § 1002(14)(B).[6]

In addition to the possibility that defendants may be fiduciaries—an issue discussed above—we cannot conclude as a matter of law that defendants did not provide a sufficient amount of services to the Plans to become "parties in interest." Plaintiff's investigator stated that each trustee used the defendants as liaisons between their plan and PAI. Although defendants contend that Ronczkowski and his staff performed PAI's pension services, this does not necessarily mean that defendants did not provide additional services to the Plans.[7] Finally, the declarations of the trustees introduced by defendants fail to show that McManus and Covelli did not provide any services to the Plans. Because defendants have failed to demonstrate that they were not parties in interest to the Plans, their motion is denied.[8]

### IV. Conclusion

For the reasons set forth above, defendants' motion is granted in part and denied in part. It is so ordered.

### *MEMORANDUM OPINION AND ORDER*

Presently before us is plaintiff's "Motion for Reconsideration" of our Memorandum Opinion and Order of January 30, 1995, granting in part and denying in part defendants' motion for summary judgment. For the reasons set forth below, plaintiff's motion is granted.

---

**5.** Pursuant to Fed.R.Civ.P. 56(f), plaintiff requests additional time to conduct discovery on this issue. The complaint in this case was filed in May 1994, and on numerous occasions we have directed plaintiff to conduct discovery on all issues in dispute. Moreover, this motion was fully briefed in November 1994, and we did not stay discovery pending its resolution. Finding no just reason for plaintiff's failure to discover and present sufficient evidence on this issue, we deny its Rule 56(f) motion.

**6.** Defendants also maintain that plaintiff has failed to introduce any evidence that they were paid excessive compensation with regard to any services they provided, and thus they cannot be held liable as parties in interest. Defendants appear to be relying on 29 U.S.C. § 1108(b):

The prohibitions provided in section 1106 of this title shall not apply to any of the following transactions:

. . . .

(2) Contracting or making reasonable arrangements with a party in interest for . . . services

necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

However, as this language makes clear, the exemption only applies to the actual provision of services for reasonable fees. Plaintiff's claim, however, is based not on defendants provision of services to the Plans, but on their sale of partnership interests to the Plans. Such activities are not exempted by § 1108(b)(2), and thus the absence of an allegation of excessive compensation does not preclude defendants' liability as parties in interest.

**7.** Indeed, Leppert's contention that the trustees did not know defendants had sold their interest in PAI at the time of the three limited partnership offerings suggests that they were performing some services for the Plans throughout this period.

**8.** As to those issues on which defendants' motion is denied, plaintiff's motion to deny or for a continuance under Fed.R.Civ.P. 56(f) is denied as moot.

## I. Background [1]

Defendants, licensed brokers of insurance products and owners of Pension Administrators, Inc. ("PAI") until 1987, are alleged to have breached their ERISA duties to several pension benefit plans ("the Plans"). Plaintiff bases part of his complaint on the allegation that defendants rendered investment advice to the trustees of the Plans, thereby rendering them fiduciaries under 29 U.S.C. § 1002(21)(A)(ii).[2] Plaintiff argues that defendants breached this duty by selling interests in certain limited partnership to the Plans.

In moving for summary judgment, defendants introduced declarations from each of the still living trustees of the Plans indicating that they made their own independent investment decisions and did not simply "rubber stamp" the defendants' recommendations. Plaintiff responded to these declarations with an affidavit from a Department of Labor investigator, Ms. Cheryl Leppert, who had interviewed the same trustees prior to the filing of this lawsuit. Leppert asserts that the trustees gave substantially different accounts of their relationship with defendants in their interviews. She claims the trustees said that they relied on the defendants' advice to a large extent when making investment decisions; that they were unaware that defendants had sold their interest in PAI in April 1987; and that at least one of the Plans had invested all of its assets in accord with defendant Covelli's recommendations. Moreover, plaintiff suggested that at the time the trustees signed the declarations, they were under the misconception that the Secretary was seeking to hold them responsible for the financial problems of the Plans. In presenting this evidence, plaintiff sought to raise a triable issue of fact with regard to whether defendants acted as "investment advisors" to the Plans.

However, we granted summary judgment on plaintiff's claim under § 1002(21)(A)(ii) based on the uncontroverted fact that defendants did not receive any compensation directly from the Plans, but were paid only by commissions. See 29 U.S.C. § 1002(21)(A)(ii) (requiring advisors to render "investment advice for a fee or other compensation, direst or indirect," before becoming fiduciaries). Plaintiff has now asked us to revisit this issue, arguing that the receipt of commissions can be sufficient to trigger fiduciary status under ERISA.

## II. Rule 59(e) Standard

■ Although plaintiff cites no Federal Rule authorizing his "Motion for Reconsideration," a motion to amend or correct an order is properly labelled as one brought under either Fed.R.Civ.P. 59(e) or 60(b). See Russell v. Delco Remy Division of General Motors Corporation, 51 F.3d 746 (7th Cir.1995). While both of these rules may be used to correct a judgment or order, they are distinctly and significantly different in their applicability and scope. Rule 59(e) explicitly permits a court to entertain a motion to alter or amend a judgment, and such a motion may be granted where the movant raises newly discovered evidence or points out manifest errors of law or fact. Id.; see Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191–92 (7th Cir.1990). However, Rule 60(b) relief is reserved for extraordinary circumstances and may only be granted for one of the particular reasons listed in the Rule. Russell, 51 F.3d at 748–49. The determinative factor in classifying a motion to reconsider is not its title or the grounds upon which it is based, but rather, when the motion is served. If such a motion is served within ten days of the entry of an order, it will be analyzed under Rule 59(e); if

---

1. Because the facts are more fully discussed in our January 30, 1995 order, we briefly reiterate here only those details necessary for our decision.

2. ERISA holds a person responsible as a plan fiduciary if:
   (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) *he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so,* or (iii) he has any discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A) (emphasis added).

not, it will be considered a Rule 60(b) motion. *See Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166–67 (7th Cir.1995); *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992).

In the instant case, our Memorandum Opinion and Order was entered on February 1, 1995.[3] Plaintiff mailed his motion to opposing counsel on February 14, 1995, thereby effectuating service on that date. Fed. R.Civ.P. 5(b); *Russell*, 51 F.3d at 749–50. As the instant motion was served within ten days of the entry of our order, *see* Fed. R.Civ.P. 6(a) (time periods under 11 days exclude intervening Saturdays and Sundays), we shall analyze it under Rule 59(e).

### III. Discussion

▮▮▮▮ Plaintiff contends that we misapplied the law when we granted summary judgment on its § 1002(21)(A)(ii) claim based on the fact that defendants did not receive compensation directly from the Plans.[4] In its instant motion, plaintiff points us to persuasive authority for the proposition that even if a party only receives compensation in the form of commissions, none of which come directly from ERISA plans, it may still be deemed a fiduciary under § 1002(21)(A)(ii). First, plaintiff cites the preamble to regulations promulgated by the Department of Labor and the Internal Revenue Service, which indicates that the phrase "fee or other compensation, direct or indirect" in ERISA may include commissions on mutual fund and insurance sales. *See* 40 Fed.Reg. 50840, 50842 (Oct. 31, 1975). Second, plaintiff argues that although exemptions to this ERISA provision exist for certain sellers who are paid by commissions, *see* 42 Fed.Reg. 32395 (June 24,

1977), none of these exemptions cover the conduct in question. Finally, plaintiff refers to certain Department of Labor Advisory Opinions which have recognized that broker-dealers who provide investment advice to ERISA plans may be fiduciaries, notwithstanding the fact that no fee was paid by the plan itself for the investment advice. The Secretary's interpretation of an ambiguous statute that it is authorized to enforce is entitled to deference, such that the interpretation will be upheld so long as it is reasonable. *See Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Atchison, Topeka and Santa Fe Ry. Co. v. Peña*, 44 F.3d 437, 441 (7th Cir.1994) (en banc). Plaintiff's proffered interpretation of § 1002(21)(A)(ii) is reasonable, since the language of the statute indicates that fiduciary status may exist regardless of whether the fee was "direct or indirect." Consequently, we read the "fee or other compensation" language of the statute as not precluding brokers such as the defendants, who were paid only by commissions, from being fiduciaries to the Plans.[5]

▮▮▮ This still leaves unresolved, however, the question presented in defendants' motion for summary judgment: Did the activities conducted by McManus and Covelli constitute the dispensing of "investment advice" as defined in § 1002(21)(A)(ii). Summary judgment will be granted only if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The

---

3. Although the minute order accompanying our Memorandum Opinion was stamped January 31, 1995, the time stamp on the document indicates that it was actually entered on February 1, 1995. Furthermore, the court's computer docketing system indicates that the order was entered on February 1, 1995. Fortunately, this ambiguity is of no import since either date would place service of the motion for reconsideration within the ten day limit of Fed.R.Civ.P. 59(e).

4. Defendants raised the issue of compensation in their motion for summary judgment, but plaintiff only briefly responded to it in his Local Rule 12(N) statement. In general, Rule 59(e) motions should not be used to introduce legal theories that could have been presented in the first in-

stance. *See Haedike v. Kodiak Research, Ltd.*, 814 F.Supp. 679, 685 (N.D.Ill.1992). However, the issue of whether defendants' compensation constituted a "fee" under § 1002(21)(A)(ii) was not the central issue in the prior motion, as all parties focused on the question of whether defendants' activities constituted "investment advice."

5. While our previous interpretation of the statute was supported by *American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc.*, 841 F.2d 658, 664 (5th Cir. 1988), we now read that case as looking to the payment structure employed by the broker as simply one of many factors to consider when determining whether he or she qualifies as a fiduciary under ERISA.

movant bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

In order to be found liable under § 1002(21)(A)(ii) a person must have rendered investment advice, which is deemed by Department of Labor regulations to have occurred only if:

(i) such person renders advice to the plan as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) such person directly or indirectly . . .

.    .    .    .    .

(B) renders any advice . . . on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan . . . that such services will serve as a primary basis for investment decisions . . . and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1). As noted in our prior opinion, we liberally construe the term "fiduciary" in ERISA. *Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.,* 884 F.2d 288, 291–92 (7th Cir.1989).

Defendants introduce statements from the trustees of the Plans indicating that they made their own investment decisions, did not automatically follow the defendants' advice, and that they could terminate their relationship with them at any time. Defendants further contend that there is no evidence they had an agreement with the trustees to provide investment advice to the Plans, and therefore under *Farm King Supply,* 884 F.2d at 293–94, we should find § 1002(21)(A)(ii) inapplicable.

Plaintiff, however, effectively undermines the veracity of the trustees' declarations with Leppert's affidavit.[6] Contrary to the trustees' contention that they made their own decisions, many stated to Leppert during their interviews that they relied only on defendants' oral representations when deciding to invest plan assets. Although defendant McManus claims to have been merely salesmen, he informed one of the trustees in 1985 that if his recommendations were disregarded then the trustee should look for a new "financial consultant." While the trustees claimed not to have simply "rubber stamped" the defendants' recommendations, some of them indicated in their interviews that they did not receive prospectuses (or did not read them) before investing. Finally, defendants contend that they did not work for PAI or own any interest in the company after April 1987, yet each trustee considered them as their liaisons with PAI, and none of them knew at the time they invested in the limited partnerships as issue that defendants had sold their interest in the company. These attacks on the declarations offered by defendants sufficiently undermines their persuasive authority,[7] and consequently, we find that defendants have not met their burden of demonstrating that no material issue of fact remains in dispute.

---

6. While much of plaintiff's evidence is hearsay and cannot be introduced for its truth, it may be used to impeach the trustees' declarations.

7. Although "[a] motion for summary judgment cannot be defeated merely by an opposing party's incantation of lack of credibility over a movant's supporting affidavit," *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988), specific attacks on an affiant's credibility with regard to central issues in a case can be sufficient to deny a

Moreover, defendants have not shown a complete absence of evidence to support plaintiff's contention that an agreement to provide investment advice existed. Defendants worked with the funds from their inception, and were their sole contact with PAI. The trustees invested most, if not all, of their funds' assets in investments recommended by defendants. The December 1985 letter from McManus to one of the trustees suggests that the parties at least entertained some expectations as to whether investment recommendations would be automatically accepted. Although plaintiff may not prevail on this claim at trial, there is enough evidence for us to conclude that a material issue of fact remains in dispute as to the applicability of § 1002(21)(A)(ii).[8]

### IV. Conclusion

For the reasons set forth above, plaintiff's motion for reconsideration is granted, and summary judgement on plaintiff's § 1002(21)(A)(ii) claim is denied except with regard to the Tu–Kaiz Litho Plan. It is so ordered.

---

motion for summary judgment. *See In the Matter of Guglielmo,* 897 F.2d 58, 63 (2d Cir.1990).

**8.** Although we are denying defendants' motion for summary judgment on the § 1002(21)(A)(ii) claims, plaintiff has abandoned his claims that defendants were fiduciaries to the Tu–Kaiz Litho Plan under § 1002(21)(A)(i) and § 1002(21)(A)(ii). Plaintiff's Resp. Br., at 11 n. 9. Consequently, while most of defendants' motion is denied, we grant summary judgment to defendants on those specific claims.